**FEDERAL TRADE COMMISSION,
Plaintiff-Appellant Cross-Appellee,**

v.

**SOUTHWEST SUNSITES, INC., et al.,
Defendants-Appellees Cross-Appellants.**

**No. 80–1793.**

United States Court of Appeals,
Fifth Circuit.

Jan. 14, 1982.

Charles D. Nelson, W. Dennis Cross, F. T. C., Washington, D. C., for plaintiff-appellant cross-appellee.

Stein, Mitchell & Mezines, Glenn A. Mitchell, Washington, D. C., for all defendants-appellees cross-appellants except Porters.

Alston, Miller & Gaines, John H. Brebbia, Washington, D. C., for Porter Realty, Inc. and Irvin Porter.

Before INGRAHAM and TATE, Circuit Judges*.

---

* Due to his death on December 22, 1981, Judge Ainsworth did not participate in this decision.

The case is being decided by a quorum. 28 U.S.C. § 46(d).

INGRAHAM, Circuit Judge:

This case presents novel questions concerning the scope of the Federal Trade Commission's statutory authorization to seek preliminary injunctive relief from the district courts. Federal Trade Commission Act § 13(b), 15 U.S.C. § 53(b) (1976).[1] Pursuant to Section 13(b), the Commission asked the court below for an order escrowing certain assets of the appellees and other defendants, all of whom were targets of an investigation into land sales in Southwest Texas, and other relief including compulsory notification to consumers who had purchased land from appellees and were continuing to make payments under their contracts. After referral to a magistrate for an evidentiary hearing, the district court preliminarily enjoined appellees from future misrepresentations and omissions in connection with these sales of land in question, but declined to order the ancillary relief requested by the Commission in the belief that Section 13(b) did not authorize such relief. We affirm the order enjoining further violations of the Federal Trade Commission Act, but reverse on the issue of ancillary relief and remand for further consideration of the appropriateness of the Commission's request.

## I. *Factual Background*

The Commission initiated its investigation of appellee Southwest Sunsites, Inc. in late 1973, shortly after the corporation began selling undeveloped land in Culberson and Jeff Davis Counties, located in Southwest Texas. This investigation later expanded to include appellees Green Valley Acres, Inc., and Green Valley Acres, Inc., II. All these companies are Texas corporations, operated by two principal individuals, Sidney Gross and Edwin Kritzler.[2] Defendant Porter Realty, a real estate broker which sold approximately sixty per cent of the land in question, was not made subject to the preliminary injunction and is therefore not before us on this appeal.

The findings of the magistrate, as adopted by the district court, show that Culberson and Jeff Davis Counties are sparsely populated, and the climate is generally described as semi-arid to arid. The approximate rainfall is eight to nine inches per year. Appellees acquired large tracts of essentially barren land in this area, subdi-

---

1. Section 13(b) provides as follows:

### Temporary restraining orders; preliminary injunctions

(b) Whenever the Commission has reason to believe—

(1) that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission, and

(2) that the enjoining thereof pending the issuance of a complaint by the Commission and until such complaint is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon has become final, would be in the interest of the public— the Commission by any of its attorneys designated by it for such purpose may bring suit in a district court of the United States to enjoin any such act or practice. Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction may be granted without bond: *Provided, however,* That if a com-

plaint is not filed within such period (not exceeding 20 days) as may be specified by the court after issuance of the temporary restraining order or preliminary injunction, the order or injunction shall be dissolved by the court and be of no further force and effect: *Provided further,* That in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction. Any such suit shall be brought in the district in which such person, partnership, or corporation resides or transacts business.

Although the lower court in *Federal Trade Commission v. British Oxygen Co.,* 529 F.2d 196 (3d Cir. 1976), ordered relief under 13(b) similar to that sought by the Commission here, the Third Circuit vacated the order and stated that it was unnecessary to reach the question of the proper scope of Section 13(b) relief. 529 F.2d at 199. Accordingly, the scope of Section 13(b) preliminary relief appears to be a question of first impression in this circuit and elsewhere.

2. The Commission's complaint as to individual defendants was dismissed for lack of personal jurisdiction. This ruling was not appealed.

vided the land and offered it for sale in parcels of between five and forty acres, for approximately $600 to $700 per acre. Among other representations, appellees' main sales claims were that the property had good potential for homesites, farming, ranching and for commercial purposes, that water and utilities were readily accessible to the property, and that the area surrounding the properties was growing and developing.

Contrary to these representations, it appears that portions of the properties are not located above available ground water, and that where ground water is available it is between 325 to 800 feet below the surface. A well to provide water for a family of four on a five acre tract would cost in excess of $6000. Similarly, most of the property is not near electric or telephone utility lines and installation of such services is estimated at up to $2500. In short, the land sold by appellees has no economically feasible commercial application in the relatively small parcels made available, and parcels of this size have no resale value.

The vast majority of purchasers entered into purchase contracts without viewing the property. A majority of the purchasers were not residents of the State of Texas, and had been solicited through extensive nationwide advertising and sales efforts. Under the purchase contracts purchasers were permitted to pay principal plus interest over periods of time up to one hundred and twenty months. Title to the property would not transfer to the purchaser until the full price was paid, and failure to make a payment would subject a purchaser to cancellation of the contract and forfeiture of all monies already paid. According to appellees' records the total balance of outstanding accounts receivable on purchase contracts as of June 1979 was approximately $10,000,000.

The magistrate and district court concluded that there was substantial evidence appellees had misrepresented the value of the land, and omitted and failed to advise purchasers of facts such as the expenditures required for water and utilities, the unfeasibility of farming and ranching on the small tracts made available, and the fact that photographs used in Southwest Sunsites' sales materials were not representative of the land as a whole. On the basis of these and other findings the district court concluded that the Commission had sufficiently established the probability that the defendants had engaged in acts and practices in violation of Section 5 of the Federal Trade Commission Act,[3] that the Commission dem-

---

**3.** Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 (1976), provides in part as follows:

(a)(1) Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are declared unlawful.

.    .    .    .    .

(b) Whenever the Commission shall have reason to believe that any such person, partnership, or corporation has been or is using any unfair method of competition or unfair or deceptive act or practice in commerce, and if it shall appear to the Commission that a proceeding by it in respect thereof would be to the interest of the public, it shall issue and serve upon such person, partnership, or corporation a complaint stating its charges in that respect and containing a notice of a hearing upon a day and at a place therein fixed at least thirty days after the service of said complaint. The person, partnership, or corporation so complained of shall have the right to appear at the place and time so fixed and show cause why an order should not be entered by the Commission requiring such person, partnership, or corporation to cease and desist from the violation of the law so charged in said complaint. Any person, partnership, or corporation may make application, and upon good cause shown may be allowed by the Commission to intervene and appear in said proceeding by counsel or in person. The testimony in any such proceeding shall be reduced to writing and filed in the office of the Commission. If upon such hearing the Commission shall be of the opinion that the method of competition or the act or practice in question is prohibited by sections 41 to 46 and 47 to 58 of this title, it shall make a report in writing in which it shall state its findings as to the facts and shall issue and cause to be served on such person, partnership, or corporation an order requiring such person, partnership, or corporation to cease and desist from using such method of competition or such act or practice. Until the expiration of the time allowed for filing a petition for review, if no such petition has been duly filed within such time,

onstrated a likelihood of success on the merits in an administrative proceeding against defendants, and that it would be in the public interest to maintain the status quo during pendency of the administrative proceeding under Section 5.

Accordingly, the district court ordered the appellees to cease and desist from making misrepresentations and failing to disclose material facts concerning the investment potential and suitability of appellees' land for homesites or commercial purposes. The court declined, however, to order ancillary relief as requested by the Commission. Pointing to the transfer of funds from the corporate defendants to the various individuals controlling these corporations, the Commission had sought an escrow of present and incoming assets to preserve the possibility of an action for consumer redress under Section 19 of the Federal Trade Commission Act.[4] Both the magistrate and the district court concluded that such a "freeze" order was not authorized by Section 13(b). The magistrate did recommend that the appellees be required to notify purchasers of the ongoing proceedings before collecting any further payments; however, this relief was also denied by the district court.

## II. *Discussion*

The Commission raises the following issues on appeal: whether the district court erred in concluding that Section 13(b) of the Federal Trade Commission Act did not permit the court to order ancillary relief in the form of an escrow of corporate assets, and compulsory notification of affected consumers; and whether the requested injunctive

---

or, if a petition for review has been filed within such time then until the record in the proceeding has been filed in a court of appeals of the United States, as hereinafter provided, the Commission may at any time, upon such notice and in such manner as it shall deem proper, modify or set aside, in whole or in part, any report or any order made or issued by it under this section. After the expiration of the time allowed for filing a petition for review, if no such petition has been duly filed within such time, the Commission may at any time, after notice and opportunity for hearing, reopen and alter, modify, or set aside, in whole or in part, any report or order made or issued by it under this section, whenever in the opinion of the Commission conditions of fact or of law have so changed as to require such action or if the public interest shall so require: *Provided, however,* That the said person, partnership, or corporation may, within sixty days after service upon him or it of said report or order entered after such a reopening, obtain a review thereof in the appropriate court of appeals of the United States, in the manner provided in subsection (c) of this section.

4. Section 19 of the Federal Trade Commission Act provides as follows:

(a)(1) If any person, partnership, or corporation violates any rule under this chapter respecting unfair or deceptive acts or practices (other than an interpretive rule, or a rule violation of which the Commission has provided is not an unfair or deceptive act or practice in violation of section 45(a) of this title), then the Commission may commence a civil action against such person, partnership, or corporation for relief under subsection (b) of this section in a United States district court or in any court of competent jurisdiction of a State.

(2) If any person, partnership, or corporation engages in any unfair or deceptive act or practice (within the meaning of section 45(a) of this title) with respect to which the Commission has issued a final cease and desist order which is applicable to such person, partnership, or corporation, then the Commission may commence a civil action against such person, partnership, or corporation in a United States district court or in any court of competent jurisdiction of a State. If the Commission satisfies the court that the act or practice to which the cease and desist order relates is one which a reasonable man would have known under the circumstances was dishonest or fraudulent, the court may grant relief under subsection (b) of this section.

**Nature of relief available**

(b) The court in an action under subsection (a) of this section shall have jurisdiction to grant such relief as the court finds necessary to redress injury to consumers or other persons, partnerships, and corporations resulting from the rule violation or the unfair or deceptive act or practice, as the case may be. Such relief may include, but shall not be limited to, rescission or reformation of contracts, the refund of money or return of property, the payment of damages, and public notification respecting the rule violation or the unfair or deceptive act or practice, as the case may be; except that nothing in this subsection is intended to authorize the imposition of any exemplary or punitive damages.

15 U.S.C.A. § 57b (Supp.1981).

relief should have been granted in light of the district court's findings that the defendants had engaged in unfair and deceptive acts and practices. On cross-appeal, appellees attack the injunction as issued, contending that there was no evidence of continuing or future violations of the Federal Trade Commission Act that would justify an injunction and that the injunction order improperly requires reference to the magistrate's recommendations in order to ascertain the acts and practices enjoined.

### A. The Scope of Preliminary Relief under Section 13.

In its complaint the Commission requested an injunction preventing future misrepresentations and omissions, and ordering the defendants to do the following: place and maintain in an escrow account, subject to the court's control, all payments to be received under land purchase contracts; make all tax, mortgage and other payments necessary to protect the purchasers' interests in the land; refrain from cancelling any contracts for a purchaser's failure to meet any obligations under the contract; and refrain from transferring, selling, assigning or in any way encumbering the land, sales contracts or other assets of the corporate defendants without specific approval of the district court. The complaint also sought to enjoin the brokers, Porter Realty and Irvin Porter, from receiving further commissions or residual commissions during the pendency of the action. In its brief to this court the Commission explains that this relief is necessary in light of the significant threat of dissipation of corporate assets: the corporations are closely held and pay the individuals involved large loan repayments and a substantial percentage of incoming payments as fixed commissions or "overrides;" and both the corporations and the individuals face a number of other legal actions. Implicit in the Commission's requests is the future availability of an action for consumer redress, including refunds, under Section 19 of the Federal Trade Commission Act. With Section 19 in mind, the Commission argues, the requested relief is within a district court's inherent equitable

jurisdiction to preserve the possibility of complete and effective relief at the conclusion of the process of adjudication on the merits. The magistrate and district court concluded that, from a plain reading of Section 13(b), the Commission may seek only that preliminary relief necessary to restrain alleged unfair practices, pending a Section 5 administrative proceeding. In this view, the scope of preliminary relief is limited to the relief which may be ordered by the Commission itself under Section 5. The ancillary relief sought here, the district court stated, could not be characterized as "merely enjoining the improper act or practice found likely to occur." Both the magistrate and district court considered the possibility of an eventual Section 19 consumer redress proceeding to be an attenuated and inadequate justification for preliminary relief.

While the grant or denial of a preliminary injunction is generally left to the discretion of the district court and will not be disturbed absent an abuse of that discretion, *Foley v. Alabama State Bar,* 648 F.2d 355, 358 (5th Cir. 1981), denial based upon an erroneous legal premise is reviewable as is any conclusion of law. *Douglas v. Beneficial Finance Co. of Anchorage,* 469 F.2d 453, 454 (9th Cir. 1972). We believe the district court adopted an unduly narrow view of its powers and responsibilities under the Act and will remand for further consideration of the requested relief under the principles discussed here.

By authorizing the Federal Trade Commission to petition a district court for preliminary injunctive relief, Section 13(b) "posts a clear entrance sign for FTC provisional relief applications." *Federal Trade Commission v. Weyerhaeuser Co.,* 1981–2 Trade Cas. (CCH) ¶ 64,263 at 74,123, 665 F.2d 1072 (D.C.Cir.1981). Although the plain language of the statute speaks only of enjoining an allegedly unlawful act of practice, virtually identical statutes permitting other agencies to seek preliminary injunctions have been interpreted as invoking the full equitable juris-

diction of the district court. *Mitchell v. DeMario Jewelry, Inc.*, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960) (Section 17 of the Fair Labor Standards Act; jurisdiction granted "to restrain violations" of the Act); *Porter v. Warner Holding Co.*, 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946) (Section 205(a) of Emergency Price Control Act of 1942; application for order enjoining violations of the Act); *Interstate Commerce Commission v. B & T Transportation Co.*, 613 F.2d 1182 (1st Cir. 1980) (Section 322(b)(1) of Motor Carrier Act; jurisdiction to restrain "further violation"). *See also Securities and Exchange Commission v. First Financial Group of Texas*, 645 F.2d 429 (5th Cir. 1981); *United States v. Coca Cola Bottling Co. of Los Angeles*, 575 F.2d 222 (9th Cir.), *cert. denied* 439 U.S. 959, 99 S.Ct. 362, 58 L.Ed.2d 351 (1978); *Commodity Futures Trading Comm'n v. Muller*, 570 F.2d 1296 (5th Cir. 1978). These cases make indisputably clear that a grant of jurisdiction such as that contained in Section 13(b) carries with it the authorization for the district court to exercise the full range of equitable remedies traditionally available to it. The doctrine is summarized in the following often quoted discussion in *Porter*:

Thus the Administrator invoked the jurisdiction of the District Court to enjoin acts and practices made illegal by the Act and to enforce compliance with the Act. Such a jurisdiction is an equitable one. Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction. And since the public interest is involved in a proceeding of this nature, those equitable powers assume an even broader and more flexible character than when only a private controversy is at stake. *Virginian R. Co. v. System Federation*, 300 U.S. 515, 552 [57 S.Ct. 592, 601, 81 L.Ed. 789]. Power is thereby resident in the District Court, in exercising this jurisdiction, "to do equity and to mould each decree to the necessities of the particular case." *Hecht Co. v. Bowles*, 321 U.S. 321, 329 [64 S.Ct. 587, 591, 88 L.Ed. 754]. It may act so as to adjust and reconcile competing claims

and so as to accord full justice to all the real parties in interest; if necessary, persons not originally connected with the litigation may be brought before the court so that their rights in the subject matter may be determined and enforced. In addition, the court may go beyond the matters immediately underlying its equitable jurisdiction and decide whatever other issues and give whatever other relief may be necessary under the circumstances. Only in that way can equity do complete rather than truncated justice. *Camp v. Boyd*, 229 U.S. 530, 551–552 [33 S.Ct. 785, 793, 57 L.Ed. 1317].

Moreover, the comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command. Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied.

328 U.S. at 397–98, 66 S.Ct. at 1088–1089. The Supreme Court's reaffirmation of this principle in *DeMario* contained this further explanation:

When Congress entrusts to an equity court the enforcement of prohibitions contained in a regulatory enactment, it must be taken to have acted cognizant of the historic power of equity to provide complete relief in light of the statutory purposes. As this Court long ago recognized, 'there is inherent in the Courts of Equity a jurisdiction to . . . give effect to the policy of the legislature.' *Clark v. Smith*, 13 Pet. 195, 203 [10 L.Ed. 123].

361 U.S. at 291–92, 80 S.Ct. at 334–335. In the exercise of this inherent equitable jurisdiction the district court may order temporary, ancillary relief preventing dissipation of assets or funds that may constitute part of the relief eventually ordered in the case. *Securities and Exchange Commission v. First Financial Group of Texas*, 645 F.2d 429 (5th Cir. 1981) (appointment of receiver); *Commodity Futures Trading Commission v. Muller*, 570 F.2d 1296 (5th Cir. 1978) ("freeze" of defendant's assets); *Securities*

and Exchange Commission v. Manor Nursing Center, 458 F.2d 1082 (2d Cir. 1972) (freeze of assets pending transfer to trustee). As this court found in Muller, such an order may be required "to preserve the status quo so that an ultimate decision for the Commission may be effective." 570 F.2d at 1300 (citations omitted).

The holdings of these cases are directly applicable to this case. Section 13(b) contains no express limitations on the otherwise full powers of the district court to mold appropriate decrees under its traditional equitable jurisdiction, and we decline to tie the hands of the district court without such express limitation. A similar conclusion was recently reached by the D.C. Circuit in its holding that Section 13(b) authorized the district court to order an acquiring company to hold separate a portion of the assets acquired through a merger. Federal Trade Commission v. Weyerhaeuser Co., 665 F.2d 1072 (D.C.Cir.1981). The D.C. Circuit reviewed the legislative history and purposes of Section 13(b) and concluded that Congress intended this section to be used flexibly and with reference to "the historic injunctive process," citing Hecht Co. v. Bowles, 321 U.S. 321, 329, 64 S.Ct. 587, 591, 88 L.Ed. 752 (1944).

We also believe that the exhortation in DeMario to preserve the possibility of complete relief, which merely restates the purpose of preliminary injunctions in general, see Developments in the Law—Injunctions, 78 Harv.L.Rev. 994, 1096 (1965), makes it appropriate to consider that the final, complete relief in this case may entail consumer redress through a Section 19 proceeding. Simply because the complete resolution of a matter will require a two-step process does not relieve a court of the task of determining how to preserve a state of affairs such that a meaningful decision can be rendered after full consideration of the merits. Indeed, although it may seem unusual at first to seek preliminary relief with reference to a separate action, it has long been considered within a court's equitable jurisdiction to issue an injunction preserving property pending a subsequent determination in another forum of the rights of parties in the property. See Arrow Transportation Co. v. Southern Railway Co., 372 U.S. 658, 679, 83 S.Ct. 984, 995, 10 L.Ed.2d 52 (1963) (Clark, J., dissenting); Erhardt v. Boaro, 113 U.S. 537, 5 S.Ct. 565, 28 L.Ed. 1116 (1885).

We observe also that several commentators have characterized a consumer redress action as a continuous two-phase process, the first phase being administrative adjudication, and the second judicial determination of appropriate redress. II S. Kanwit, Federal Trade Commission § 21.05 (1980); Kintner & Westermeier, Obtaining Refunds for Consumers Under Section 19 of the FTC Act, 29 Syracuse L.Rev. 1025, 1034–36 (1978). Such a characterization, which strikes us as a reasonable one, makes even more apparent the propriety of framing preliminary relief with the entire process in mind.

These conclusions are entirely consistent with the legislative history of both Sections 13(b) and 19. Section 13(b) was introduced by Senator Jackson as a floor amendment to S. 1081, the Federal Lands Right-of-Way Act, and became Section 408(f) of the Trans-Alaska Pipeline Authorization Act, Pub.L. No. 93–153, 15 U.S.C. § 53(b) (1976). Senator Jackson stated that the proposed new Commission authority, of which Section 13(b) was one of several provisions, was "designed to enable the Commission to carry out its mandate to protect the public interest through a prompt and aggressive enforcement of the laws it administers." 119 Cong.Rec. 22979 (July 10, 1973). See also Sections 408(a)(1), and (b), Pub.L. No. 93–153, 87 Stat. 591. Although the preliminary relief provisions were intended to apply to both deceptive practices and anti-competitive conduct cases, as indicated by the express application of Section 13(b) to "any provision of law enforced by the FTC," most of the discussion in the House concerned the need for preliminary relief in anti-competitive-merger cases. Nevertheless this discussion is revealing; Representative Smith noted that substantial public injury can take place during the pendency

of a Commission proceeding, and that "without injunctive powers the Federal Trade Commission frequently is left with having to impose remedies that are conspicuously inadequate .... The Commission may rule the conduct illegal but during this operation the patient may die.... Without this injunction power consumers have no protection at all during the pendency of the suit.... It is only good sense that where there is a probability that the act will eventually be found illegal and the perpetrator ordered to cease, that some method be available to protect innocent third parties while the litigation winds its way through final decision." 119 Cong.Rec. 36608–9 (Nov. 12, 1973). The conference report did not specifically address the scope of 13(b) relief.

Approximately one year later, Congress passed the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act, Pub.L. No. 93–637, 88 Stat. 2183. Section 206, Consumer Redress, added the new Section 19 of the Federal Trade Commission Act. This legislation was explicitly intended to improve the Commission's consumer protection powers. See S.Conf.Rep. 93–1408, 93d Cong. 2d Sess. 1 (1974), [1974] U.S.Code Cong. & Admin.News, 7702, 7755. Significantly, Representative Eckhardt, quoting an administration spokesman, urged that consumer fraud be rendered "pursuable, punishable, and profitless." 120 Cong.Rec. 31735 (Sept. 19, 1974). The evident intent of these 1975 amendments was to add significant new weapons to the Commission's enforcement arsenal in order to make more meaningful and complete consumer relief possible. It seems to us that not only is the use of preliminary relief a desirable and effective method of implementing consumer redress under Section 19, but that precluding such preliminary relief could entirely prevent the effectuation of Section 19 in circumstances such as those alleged by the Commission in this case.

■ We believe that through these various recent amendments to the Federal Trade Commission Act, "Congress was evolving a statutory plan for the protection of the ... public." *Securities and Exchange Commission v. Keller Corp.*, 323 F.2d 397, 403 (7th Cir. 1963). The Act clearly makes the district court a vital "enforcement arm" of the statute. *Renegotiation Board v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 19–20, 94 S.Ct. 1028, 1038, 39 L.Ed.2d 123 (1974). The type of ancillary relief sought by the Commission in this case appears to be well within the jurisdiction of the district court under Section 13(b), in order to preserve the status quo pendente lite and assure the possibility of complete relief following administrative adjudication.

■ Appellees raise two principal objections to the application of the inherent equitable jurisdiction doctrine to this case.[5] First, appellees argue that all the cases involving agencies other than the Federal Trade Commission are inapplicable because those other agencies all bring their enforcement actions directly in federal district court, where the court has continuing su-

5. Two of appellees' arguments may be summarily disposed of. In support of its argument that Section 13(b) is not intended to grant the type of preliminary relief requested by the Commission in this case, appellees point to the failure of subsequent bills introduced in Congress to specifically grant the Commission the power in dispute in this case. As the Commission points out, however, it is not improper for an agency to seek explicit authorization for powers thought to be somewhat controversial, and any number of reasons for the failure of this subsequent legislation are possible. Courts typically refrain from drawing conclusions from subsequent legislative history for precisely these reasons. *See Federal Trade*

*Commission v. Dean Food Co.*, 384 U.S. 597, 609, 86 S.Ct. 1738, 1745, 16 L.Ed.2d 802 (1966); *United States v. Philadelphia National Bank*, 374 U.S. 321, 348–49, 83 S.Ct. 1715, 1733, 10 L.Ed.2d 915 (1962).

At oral argument, counsel for appellees also suggested that a due process violation would result if the Commission determined, prior to the Section 5 administrative hearing, that it would also seek consumer redress under Section 19. *But cf. Withrow v. Larkin*, 421 U.S. 35, 46–59, 95 S.Ct. 1456, 1463–1470, 43 L.Ed.2d 712 (1975). This contention was not addressed in the briefs, however, and now comes too late. *See Harris v. Plastics Mfg. Co.*, 617 F.2d 438, 440 (5th Cir. 1980).

pervision over the litigation. In contrast, the Commission does not rely on the district courts for this purpose but rather conducts its own administrative hearings, over which the district court that issues preliminary relief has no control. We reject this attempted distinction. As the Commission points out, appellees' argument would prevent the issuance of any preliminary injunction sought by the Commission, despite Section 13(b), on the ground that the administrative proceedings were likely to be protracted. As we observed at the outset of this discussion, the relevant statutory language in Section 13(b) is virtually identical to the language of other legislation that has been found to invoke the district court's general equitable jurisdiction. Appellees' arguments in this context do not suggest the "clear and valid legislative command, ... or necessary and inescapable inference" required by *Porter* to negate the comprehensiveness of the Court's equitable jurisdiction. 328 U.S. at 398, 66 S.Ct. at 1089. We also note that lack of continuing supervisory control over the administrative proceeding did not concern the Supreme Court when it authorized the Commission to seek preliminary relief under the All Writs Act, 28 U.S.C. § 1651(a) (1976), to enjoin a merger pending administrative proceedings. *Federal Trade Commission v. Dean Foods Co.*, 384 U.S. 597, 604, 86 S.Ct. 1738, 1742, 16 L.Ed.2d 802 (1966). While we have no indication here that the Commission's administrative proceedings will be unduly protracted, if such facts do arise, it remains within the discretion of the district court to tailor any preliminary injunction to minimize the harm to appellees' legitimate business activities, or to condition the granting of the injunction on adoption of an expedited hearing schedule. *See Federal Trade Commission v. British Oxygen*, (CCH) 1974 Trade Cas. ¶ 75,003 (D.Del.1974), *vacated, Federal Trade Commission v. British Oxygen*, 529 F.2d 196 (3d Cir. 1976).

Appellees' second argument is that any order of preliminary relief under Section 13(b), by the terms of the statute, has limit-

ed duration and only lasts "pending the issuance of a complaint by the Commission and until such complaint is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon has become final...." 15 U.S.C. § 53(b)(2) (1976). An order of the Commission becomes final upon the exhaustion of available review procedures, or expiration of time to seek such review. 15 U.S.C. § 45(g) (1976). Because of this limited duration, appellees argue, the preliminary injunctive relief section could not have been intended to be used in conjunction with Section 19, which comes into play only after a final cease and desist order. 15 U.S.C. § 57b(a)(2) (1976). While we agree with appellees' reading of the limited duration of a Section 13(b) preliminary order, this presumably signifies only that once the Commission has issued a cease and desist order it must then apply to whatever district court will consider a Section 19 proceeding for further relief. The limited question facing a district court in these circumstances is whether, in light of the showing of likelihood of success, injunctive relief to preserve the status quo *at this time* is in the public interest.

We conclude that the doctrine of inherent equitable jurisdiction is fully applicable where, as here, "Congress has utilized ... the broad equitable jurisdiction that inheres in courts and where the proposed exercise of that jurisdiction is consistent with the statutory language and policy, the legislative background and the public interest." *Porter*, 328 U.S. at 403, 66 S.Ct. at 1091.[6]

In its opinion the district court cited *Federal Trade Commission v. Turner*, 609 F.2d 743 (5th Cir. 1980), in the apparent belief that while the Commission acts in the public interest when proceeding under Section 13(b), this public interest role does not carry over to a Section 19 proceeding, which is brought to redress private injuries. *Turner*, however, concerned the power of the Commission itself to issue subpoenas in aid

---

6. The parties also contest the admissibility of various items of evidence produced by the

Commission. Any such challenges not yet waived can be considered on remand.

of its Section 19 authority. Therefore we do not feel that case controls the question presented here, regarding the inherent equitable jurisdiction of the district court and the exercise of that jurisdiction under the statutory scheme of the Federal Trade Commission Act.

Because of our resolution of this issue we need not address the possible use of the All Writs Act, or the question of the Commission's own power to order consumer redress in a Section 5 cease and desist order.

### B. The Standard for Issuing Ancillary Relief.

■ In its discussion of the ancillary relief requested, the district court stated:

Assuming, *arguendo*, that such an order is authorized under section 13, a court would be loathe to issue such an injunction in the absence of a strong showing of dissipation of assets. Under the evidence before me, I do not believe that this case warrants this drastic and unprecedented relief.

Appellees contend that this statement was a finding of fact that precludes availability of the requested injunctive relief unless shown to be clearly erroneous. Whether or not this statement is intended to be a finding of fact, it is clear that the district court was applying a standard requiring a "strong showing" of the need for the particular relief requested. This standard appears to be excessively harsh, and on remand the district court should reexamine the evidence and determine whether the requested relief is "reasonably necessary" in order to preserve the possibility of complete and meaningful relief at the conclusion of litigation. *See Commodity Futures Trading v. Muller*, 570 F.2d at 1296, 1301 (5th Cir. 1978); *cf. United States v. Coca-Cola Bottling Co. of L. A.*, 575 F.2d 222, 231 (9th Cir.), *cert. denied*, 439 U.S. 959, 99 S.Ct. 362, 58 L.Ed.2d 351 (1978) ("reasonable probability" that merger would be anticompetitive). In view of the Commission's indications that any consumer redress sought in this case would be through Section 19 and not other mechanisms, the district court

should additionally inquire as to the likelihood of the Commission's success on the question whether the acts and practices under scrutiny are ones that "a reasonable man would have known under the circumstances [were] dishonest or fraudulent." Section 19(a)(2), 15 U.S.C.A. § 57b(a)(2) (Supp.1981).

### C. Compulsory Notification.

■ Although the Commission's complaint did not specifically mention compulsory notification to purchasers of the ongoing proceedings, the complaint did allege that the defendants were continuing to misrepresent and failing to disclose material facts to purchasers and sought an order compelling defendants to cease and desist such acts. The magistrate recommended that the defendants be enjoined from receiving and depositing further payments pursuant to purchase contracts until the purchasers are advised of the possibility of such misrepresentations and omissions. The district court rejected this recommendation, stating "A notification order suffers from the same defects as does creation of escrow accounts; each is solely referrable to past alleged violations."

Once again we believe the district court took an unduly narrow view of its available jurisdiction under Section 13(b). In a suit for permanent injunction under Section 13(b), the court in *Federal Trade Commission v. Virginia Homes Mfg. Corp.*, 509 F.Supp. 51, 55 (D.Md.1981), *aff'd, Federal Trade Commission v. Virginia Homes Mfg. Corp.*, No. 81–1187 (4th Cir., July 14, 1981) (unpublished), held that "compulsory notice is implicitly authorized by section 13(b) so long as such notice would be essential to the effective discharge of the court's responsibilities." *See also Federal Trade Comm. v. Travel King, Inc.*, 1977–1 Trade Cas. (CCH) ¶ 61,419 (W.D.Wash.1974). Because of our holding above that Section 13(b) invokes the inherent equitable jurisdiction of the district courts, we remand to allow the district court to reconsider whether notification to consumers is called for in this case. As in *Virginia Homes*, it is conceivable that consumers could be prevented from properly

asserting their possible legal rights absent notification of possible misrepresentations. We note that the case for notification was much more compelling in *Virginia Homes*, however; there, holders of warranties that were found to violate federal law in various respects would be unaware of their newer more expansive warranty rights absent the notification. 509 F.Supp. at 56. *See also FTC v. Travel-King, Inc.*, 1977–1 Trade Cas. (CCH) ¶ 61,419 (W.D.Wash.1974) (notification regarding "psychic surgery" claims). Accordingly, in the exercise of its discretion the district court may conclude that the rights of purchasers would be adequately protected by other preliminary relief.

III. *The Cross-Appeal*

Appellees argue that there was no showing of any continuing or future violations of the Act that would justify the district court's injunction prohibiting further misrepresentations and omissions in connection with the sale of land. Appellees point to the magistrate's finding that there is no promotional or sales campaign presently carried on by appellees. This same finding, however, states that sales on-site are continuing; the magistrate's findings generally suggest that the appellees' business operations are still in place.

The district court acted well within its discretion in ordering appellees to cease and desist from further violations of the Act. This is particularly true when the evidence developed to date suggests a large-scale systematic scheme tainted by fraudulent and deceptive practices, giving rise to a "fair inference of a reasonable expectation of continued violations" absent restraint. *Securities and Exchange Commission v. Manor Nursing Center, Inc.*, 458 F.2d 1082, 1100–01 (2d Cir. 1972).

Appellees' final attack on the injunction issued is that the terms of the injunction fail to comply with the requirement of specificity in Fed.R.Civ.P. 65 in two respects: the use of "catchall" phrases such as "misrepresentation" and "disclosure of material facts" is impermissibly vague; and the provisions of the court's order that adopt or refer to the magistrate's report violate Rule 65(d)'s prohibition of reference to other documents.

In its order, the district court reviews the magistrate's report adopting particular findings and modifying others and concludes by ordering appellees to "cease and desist from making misrepresentations and failing to disclose material facts to purchasers and prospective purchasers concerning investment potential and suitability of land in [appellees' subdivisions] regarding usability as homesites, farms, ranches or for commercial purchases." We find nothing impermissibly vague about the use of the terms "misrepresentation" and "failure to disclose material facts" in the context of the district court's order, particularly because the order does expressly describe the difficulty in obtaining utility services for the property and the economic unfeasibility of the land for farming, ranching or commercial purposes in the small parcels made available. There seems to be little danger that appellees will misapprehend what misrepresentations and omissions are prescribed, or that appellees will be liable to contempt citations for activities not contemplated by this order.

However, several of the magistrate's findings adopted by reference deal with specific acts and practices the magistrate and the district court consider to be material misrepresentations and omissions; for example, finding 23 regarding misrepresentation of the potential appreciation in value, and findings 24(b) and (c) concerning the failure to advise purchasers of the substantial sums of money required to make the land suitable for housing or farming. Incorporation of such findings by reference violates the prohibition in Rule 65(d) of "reference to the complaint or other document." This no-reference requirement has been strictly construed in this circuit. *See Meltzer v. Board of Public Instruction of Orange County, Florida*, 480 F.2d 552, 554 (5th Cir. 1973) (provision of order referring to court's prior order violates Rule 65(d)); *B. H. Bunn Co. v. AAA Replacement Parts Co.*, 451 F.2d 1254, 1269 (5th Cir. 1971)

(reference back to findings of fact may be insufficient to advise parties of permissible and prohibitive conduct). Accordingly, on remand the district court should explicate its references to the magistrate's order. The Commission protests that correction of this defect calls for the purely mechanical exercise of typing in the specific parts of the magistrate's report where indicated. This may indeed seem overly technical, but it would allow the parties to interpret the injunction "from the four corners of the order" as required by Rule 65(d). *Sanders v. Airline Pilots Ass'n International*, 473 F.2d 244, 247 (2d Cir. 1972).

## IV. *Conclusion*

In summary, we remand for the district court to revaluate its denial of the Commission's requested preliminary injunctive relief in light of our discussion of the availability of such measures under Section 13(b) of the Federal Trade Commission Act. We affirm the injunction issued by the district court insofar as it enjoins further violations of the Act, and direct that the district court amplify its references to the magistrate's report.

AFFIRMED in part; REVERSED and REMANDED in part.