**Tommy M. PARKER, Plaintiff and Counterclaim Defendant,**

v.

**Timothy RYAN, Director of the Office of Thrift Supervision, and United States Department of Treasury, Defendants and Counterclaim Plaintiffs.**

**Civ. A. No. DC90–W186–B–O.**

United States District Court,
N.D. Mississippi,
Delta Division.

Jan. 2, 1991.

Shelby Duke Goza, Oxford, Miss., Patrick F. McManemin, J. Thomas Gilbert, Dallas, Tex., for plaintiff and counterclaim defendant.

Richard C. Stearns, Felix V. Baxter, Dept. of Justice, Civ. Div., Washington, D.C., William M. Dye, Jr., Oxford, Miss., Paul Leiman, Office of Thrift Supervision, Washington, D.C., for defendants and counterclaim plaintiffs.

## ORDER GRANTING DEFENDANTS' AND COUNTERCLAIMANTS' MOTION FOR TEMPORARY RESTRAINING ORDER

BIGGERS, District Judge.

Before the Court is Defendants' and Counterclaim Plaintiffs' motion for a temporary restraining order to enforce a statutorily imposed temporary cease-and-desist order.

### I. FACTS

Plaintiff and Counterclaim Defendant Tommy M. Parker is a former director, officer, loan committee member and shareholder of Mississippi Savings Bank of Batesville, Mississippi ("MSB"). On April 23, 1990, the Office of Thrift Supervision ("OTS"), United States Department of the Treasury, initiated a formal enforcement action against MSB to prevent the financial institution from continuing to engage in certain illegal and imprudent financial transactions. *See* OTS Resolution No. ERC–90–37 (April 23, 1990). This OTS enforcement action went unchallenged by MSB. On May 8, 1990, pursuant to 12 C.F.R. § 567 *et seq.*, MSB was placed in receivership under the direction of the Resolution Trust Corporation for failure to meet its minimum capital requirements.

Subsequently, on November 16, 1990, following further examination of actions taken by MSB officials, including Parker, OTS initiated administrative proceedings to bar Parker and other former officials of MSB and its subsidiaries from participation in the affairs of federally insured savings institutions and to recover monies that belong to MSB.

In conjunction with the initiation of these administrative proceedings, OTS issued a temporary order to cease-and-desist ("Order"), *inter alia*, to Parker. The Order seeks to prevent Parker from dissipating MSB assets during the pendency of administrative proceedings. The Order requires Parker; (1) to provide to OTS a sworn statement identifying all accounts or other assets; (2) to provide to OTS a financial statement prepared by a certified public accountant identifying all of his assets and liabilities as of a date no earlier than June 1, 1990, to be updated quarterly; (3) to cease and to refrain from transferring any funds or assets other than those necessary to pay ordinary and reasonable living expenses; (4) to provide OTS with federal and state tax forms for 1988 and 1989; (5) to cease and to refrain from selling, transferring or encumbering funds or other assets of any nature whatsoever in which he or any member of his immediate family has a legal or beneficial interest; (6) to provide OTS with 48 hours notice prior to transferring any asset in excess of $5,000; and (7) to provide security to OTS in the amount of $13,842,009. Parker has failed to comply with OTS' Order.[1]

On November 26, 1990, Parker, through his counsel, filed the instant lawsuit chal-

---

1. Pursuant to paragraph 19 of the OTS Order, if compliance with the terms of the Order will cause undue hardship Parker may make an appropriate application to the Director of OTS for relief or modification.

lenging OTS' Order. Parker claims that: (1) the Order exceeds OTS' authority under 12 U.S.C. § 1818(c)(1), and (2) the Order violates his right to due process by depriving him, without a prior hearing, of a significant property interest, *i.e.*, financial assets. On December 7, 1990, OTS filed a counterclaim against Parker and moved for a temporary restraining order requiring Parker to comply with the terms of OTS' Temporary Cease-and-Desist order.

## II. STANDARDS FOR ISSUANCE OF A TEMPORARY RESTRAINING ORDER

 In general, a party may obtain temporary injunctive relief upon a showing of (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that may result from the injunction to the non-movant; and (4) that the injunction will not undermine public interests. *See Roho, Inc. v. Marguis*, 902 F.2d 356, 358 (5th Cir.1990), *citing Allied Mktg. Group, Inc. v. CDL Mktg, Inc.*, 878 F.2d 806, 809 (5th Cir.1989). However, in actions brought to enforce remedial statutes such as the Federal Deposit Insurance Act, *as amended*, district courts have broad discretion to fashion appropriate relief. *Commodity Futures Trading Commission v. Muller*, 570 F.2d 1296, 1300 (5th Cir.1978). Thus, a regulatory financial agency, such as OTS, need not prove irreparable injury or the inadequacy of other remedies as required in private injunctive suits. *Id.* Rather, OTS need only demonstrate a prima facie case of illegality.[2] *Id.*

## III. THE FINANCIAL INSTITUTIONS REFORM RECOVERY AND ENFORCEMENT ACT OF 1989 ("FIRREA") AS AMENDED, 12 U.S.C. § 1811 ET SEQ.

 Pursuant to FIRREA, OTS is authorized to initiate administrative enforcement

proceedings to determine whether specified banking practices are sound. 12 U.S.C. § 1818(b)(1); *see David S. Paul v. Office of Thrift Supervision, et al.*, 763 F.Supp. 568 (1990). During the pendency of these proceedings, the OTS may issue a temporary cease-and-desist order to maintain the integrity of the assets at issue. 12 U.S.C. § 1818(c)(1). More specifically, this section states that:

> [W]henever the appropriate Federal banking agency shall determine that the violation or threatened violation or the unsafe or unsound practice or practices, specified in the notice of charges served upon the depository institution or any institution-affiliated party pursuant to paragraph (1) of subsection (b) of this section, or the continuation thereof, is likely to cause insolvency or significant dissipation of assets, or earnings of the depository institution, or is likely to weaken the condition of the depository institution or otherwise prejudice the interests of its depositors prior to the completion of the proceedings conducted pursuant to paragraph (1) of subsection (b) of this section, the agency may issue a temporary order requiring the depository institution or such party to cease and desist from any such violation or practice and to take affirmative action to prevent such insolvency, dissipation, condition, or prejudice pending completion of such proceedings....

In addition, FIRREA expressly authorizes OTS to issue temporary cease-and-desist orders which require depository institutions or parties to (1) make restitution or provide reimbursement, indemnification, or guarantee against loss, (2) dispose of any loan or asset involved, and (3) take such other action as the banking agency determines to be appropriate. 12 U.S.C. § 1818(c) and (b)(6), *as amended* by Section

---

**2.** Although, in this Circuit, this standard has long been controlling in this type of case, Congress recently expressly codified it as the operative standard in enforcement actions brought pursuant to the Federal Deposit Insurance Act, *as amended*. *See* Section 2521(b)(1) of the

Comprehensive Thrift and Bank Fraud Prosecution and Taxpayer Recovery Act of 1990, Title XXV of the Crime Control Act of 1990, P.L. 101–647; 101 Cong.Rec.E. 3686 (November 2, 1990).

2596(b) of the Comprehensive Thrift and Bank Fraud Prosecution and Taxpayer Recovery Act of 1990.[3]

Upon the failure of an institution or party to comply with the terms of an Order, FIRREA empowers OTS to enforce these orders in a district court pursuant to 12 U.S.C. § 1818(d).[4] In pertinent part, this section states:

> [i]n the case of violation or threatened violation of, or failure to obey, a temporary cease-and-desist order issued pursuant to paragraph (1) of subsection (c) of this section, the appropriate Federal banking agency may apply to the United States district court ... for an injunction to enforce such order, and, if the court shall determine that there has been such violation or threatened violation or failure to obey, it shall be the duty of the court to issue such an injunction.

Injunctive relief at the behest of OTS is appropriate upon a prima facie showing of illegality. *See* 101 Cong.Rec.E. 3686 (November 2, 1990); *cf. Commodity Futures Trading Commission v. Muller, supra.*

In this case, OTS has initiated administrative enforcement proceedings against Parker pursuant to 12 U.S.C. § 1818(b)(1). *See* Notice of Charges and Hearing to Direct Restitution and Other Appropriate Relief, Notice of Intention to Prohibit Respondents from Participating in the Conduct of the Affairs of Federally Insured Depository Institutions, and Notice of Assessment of Civil Money Penalties (order No. 90–2019) issued November 16, 1990) ("Notice"). The Notice, based on an examination of MSB financial transactions during Parker's tenure as a director, shareholder, officer and loan committee member, charges Parker with unsound banking practices in conducting the business of MSB; with engaging in acts or omissions which constitute breaches of fiduciary duties; and violations of laws and regulations thereby causing financial losses to MSB and prejudicing the interests of MSB and its depositors. The Notice also charges Parker with improper personal financial gain or other personal benefits by reason of such violations, practices and breaches of his fiduciary duties.

Pursuant to the findings against Parker and in accord with the authority granted to OTS by Congress, 12 U.S.C. § 1818(c)(1), *as amended,* OTS issued its Order to maintain the status quo by preventing the dissipation of assets, pending administrative proceedings, that may be determined to belong to MSB. In issuing the Order pursuant to a Notice initiated under 12 U.S.C. § 1818(b)(1), OTS has met its burden to demonstrate a prima facie case of illegality. *Cf. Commodity Futures Trading Commission v. Muller,* 570 F.2d at 1298–1300. Because Parker has failed to comply with OTS' Order, OTS is entitled to injunctive relief to compel him to comply with the terms of such Order.

## IV. DUE PROCESS

█ Parker claims that the OTS Order, which requires the posting of security pending administrative proceedings, deprives him of due process of law. As the Court observed in *Paul v. Office of Thrift Supervision, supra* at 4, due process imposes constraints on governmental actions that deprive individuals of property such as their personal assets. *Citing FDIC v. Mallen,* 486 U.S. 230, 108 S.Ct. 1780, 1787, 100 L.Ed.2d 265 (1988). However, as the *Paul* decision correctly indicates, the FIRREA provides a hearing allowing institutions or parties to contest OTS orders in a district court. Here, as in *Paul,* due to the urgency of OTS' actions, Parker is not entitled to a pre-deprivation hearing.

---

**3.** The amendments to FIRREA expressly confirm Congress' intent regarding the original scope of OTS' powers to issue temporary cease-and-desist orders requiring affirmative actions. *See* 101 Cong.Rec.E. 3691 (November 2, 1990). It expressly rejects the restrictive ruling in *Spiegel v. Ryan,* 1990 WL 125672, 1990 U.S.Dist.Lexis 14968 (C.D.Calif.1990), *appeal pending* (9th Cir.). In any event, the Court finds that it is appropriate to apply the current law before it in these proceedings. *See Bradley v. Richmond School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974).

**4.** A party or institution may seek an injunction to limit the temporary order pursuant to 12 U.S.C. § 1818(c)(2).

In *Mallen,* 108 S.Ct. at 1789, the Supreme Court articulated the standard for deprivation of property interests without prior hearings. In pertinent part, the Supreme Court held that:

> an important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation.... In this case, the postponement of the hearing is supported by such an interest. The legislation under scrutiny is premised on the *congressional finding that prompt suspension of indicted bank officers may be necessary to protect the interest of depositors and to maintain public confidence in our banking institutions.*

The congressional findings governing the present case clearly demonstrate that federal banking authorities may act promptly to protect depositor's interest with temporary cease-and-desist order. *Paul v. OTS, supra* at 5. Here, as in *Paul,* the important governmental interest warrants a post-deprivation hearing. Moreover, in this case, such hearing has been afforded to Parker through his initiation of this lawsuit pursuant to 12 U.S.C. § 1818(c)(2) and OTS' counterclaim pursuant to 12 U.S.C. § 1818(d).

## V. THE TRADITIONAL STANDARDS FOR INJUNCTIVE RELIEF

■ As previously indicated, the standards governing temporary injunctive relief on behalf of financial regulatory agencies such as OTS require a showing of a prima facie case of illegality. Alternatively, however, it is this Court's finding that OTS' has met the traditional standards governing the issuance of such relief. For the reasons set forth in Sections III and IV *supra,* OTS has demonstrated a substantial likelihood of prevailing on the merits that its Order complies with the requirements of 12 U.S.C. § 1818 *et seq., as amended,* and that the pre-hearing deprivation is justified by the important governmental interests embodied in FIRREA.

As to the second and third prongs of the test, the federal government will suffer substantial irreparable injury if Parker is unable to make up the losses which his actions may have caused MSB and, ultimately, the federal government to incur if he is able to transfer to move assets to locations where their recovery will be precluded. *Placid Oil Co. v. United States Department of the Interior,* 491 F.Supp. 895, 906 (N.D.Tex.1980); *Pan American World Airways v. Marshall,* 439 F.Supp. 487, 497 (S.D.N.Y.1977). Parker, on the other hand, has failed to demonstrate any irreparable harm which might result from a temporary freeze of his assets that outweighs the harm to MSB and the federal government. Indeed, in and of itself, such financial concerns as those urged by Parker generally are not regarded as indicia of irreparable injury. *See Atwood Turnkey Drilling v. Petroleo Brasiliero,* 875 F.2d 1174, 1179 (5th Cir.1989). Moreover, OTS Order provides a mechanism for Parker to seek relief from any undue hardship resulting from the terms of the Order.

Turning to the final prong, the Court finds that the public interest lies in the safety and soundness of the national banking system. *See United States v. Federal Deposit Ins. Corp.,* 881 F.2d 207, 209 (5th Cir.1989); *Federal Savings & Loan Insurance Corp. v. Dixon,* 835 F.2d 554, 557–58 (5th Cir.1987). The issuance of temporary cease-and-desist orders by OTS accords with Congress' intent to provide an efficient and effective mechanism by which financial regulatory agencies may act to protect the public interests. *See* FIRREA § 101(9), (10), 12 U.S.C. § 1811 note; 132 Cong.Rec.E. 3691 (November 2, 1990). Based on the foregoing, it is therefore

ORDERED AND ADJUDGED THAT OTS' motion for a temporary restraining order enforcing its Temporary Cease-and-Desist Order is GRANTED and that plaintiff and counterclaim defendant Parker is ORDERED immediately to comply with the terms of OTS Order No. 90–2017 (November 16, 1990).

DONE AND ORDERED.