COMMODITY FUTURES TRADING
COMMISSION, Plaintiff,

v.

Daniel CLOTHIER, Collins Commodity
Brokerage Company, and Heartland
Futures Fund, Defendants.

Civ. A. No. 92–1062–B.

United States District Court,
D. Kansas.

March 11, 1992.

Rosemary Hollinger, Susan B. Padove, Terrance A. Hilliard, Dennis M. Robb, Div. of Enforcement, Commodity Futures Trading Com'n, Chicago, Ill., for plaintiff.

Stephen M. Joseph, Joseph, Robison & Anderson, P.A., Wichita, Kan., Charles J. Hecht, New York City, for defendants.

## MEMORANDUM AND ORDER

BELOT, District Judge.

This matter is before the court on the motion of plaintiff Commodity Futures Trading Commission ("Commission") for a restraining order. The Commission filed this action on February 11, 1992 seeking an *ex parte* restraining order against defendants for alleged violations of the Commodity Exchange Act ("the Act"), 7 U.S.C. §§ 1 *et seq.*, and various regulations thereunder. The court held an expedited hearing in this matter on the same day, in which hearing defendants' counsel also participated. In a written order filed February 14, 1992, the court granted in part and denied in part plaintiff's motion for a restraining order. The court deferred ruling on several matters, however, pending further briefing and argument by counsel. The court held a second hearing on February 26, 1992 and made additional rulings. This memorandum and order is provided to set forth the court's rationale and to memorialize its rulings.

I. *Background*

The Commission is an independent federal regulatory agency having authority to administer the provisions of the Act, 7 U.S.C. §§ 1 *et seq.*, and the regulations promulgated thereunder, 17 C.F.R. §§ 1 *et seq.* The Commission alleges that defen-

dant Daniel Clothier is registered as an "associated person" for defendant Collins Commodity Brokerage Company ("CCBC")—a Kansas corporation allegedly owned and controlled by Clothier. CCBC has been registered with the Commission as an "introducing broker" pursuant to § 4f of the Act, 7 U.S.C. § 6f, and as a "commodity pool operator" pursuant to § 4m of the Act, 7 U.S.C. § 6m. The Commission further alleges that defendant Heartland Futures Fund ("Heartland") is a Kansas limited partnership organized as a commodity pool in 1984, and that Clothier has been the general partner and commodity pool operator of Heartland since its inception.

This action was initiated as a result of information that the Commission received that a commodity pool operator based in Wichita, Kansas had misappropriated over $1 million in customer funds invested in Heartland. Before the Commission received this information, it was first reported to and investigated by the National Futures Association ("NFA")—a private self-regulatory organization of the futures industry.

The complaining customer was Dr. Martin Peskin, whose attorney provided the NFA with numerous documents concerning Dr. Peskin's investments with Clothier, CCBC, and Heartland. According to the Commission, the September 1991 account statement prepared by Clothier shows that the total value of Dr. Peskin's investment was $1,084,119, most of which was invested in Heartland. The Commission further alleges that Heartland's September monthly statement showed the total value of the pool to be $1,051,833.54. Dr. Peskin also provided the NFA with a letter from Clothier to Peskin dated November 22, 1991, which states: "I am embarrassed to advise you that the Heartland Futures Fund is essentially wiped out." (Ext. 2 to Complaint).

On January 28, 1992, the NFA referred the matter to the Commission, which confirmed the information provided to the NFA. On January 31, 1992, Division staff for the Commission went to the offices of

Clothier and CCBC. The staff asked to inspect the books and records for Heartland, but Clothier—acting on the advice of his attorney—refused permission. With respect to the records of Heartland, Clothier has consistently denied the requests to inspect made by either the Commission, the NFA, or Dr. Peskin's attorney.

## II. *Arguments and Analysis*

■ The primary purpose of the February 14 order was to resolve jurisdictional objections raised by defendants to the inspection of Heartland's books and records by the Commission. Defendants correctly note that the burden is upon the Commission to establish subject matter jurisdiction over a party. *See Miller v. United States*, 710 F.2d 656, 662 (10th Cir.), *cert. denied*, 464 U.S. 989, 104 S.Ct. 352, 78 L.Ed.2d 316 (1983); *Baird v. United States*, 653 F.2d 437, 440 (10th Cir.1981).

This court's jurisdiction is invoked under § 6c of the Act, 7 U.S.C. § 13a–1, which—among other matters—grants district courts the authority to enjoin any act or practice constituting a violation of the Act and the rules and regulations promulgated thereunder. Under § 13a–1, the court is specifically empowered to issue

a restraining order which prohibits *any person* from destroying, altering or disposing of, or *refusing to permit authorized representatives of the Commission to inspect, when and as requested, any books and records or other documents* or which prohibits any person from withdrawing, transferring, removing, dissipating, or disposing of any funds, assets, or other property, ....

(emphasis added).

Defendants raise numerous arguments attempting to establish that Heartland is not a commodity pool, or alternatively, that Heartland is not a commodity pool required to register with the Commission. According to defendants, Heartland ceased trading in commodity interests over five years ago. Thus, defendants argue, Heartland is not subject to the jurisdiction of the Commission and is not obligated to allow the

Commission access to its records. *See* 17 C.F.R. § 4.13(a)(2)(i).

■ Defendants proceed from the assumption that the Commission must establish the existence of an actual commodity pool before filing an action that seeks to require inspection of Heartland's records. The jurisdictional statute, however, contains no such requirement. Rather, the statute permits the Commission to bring actions "[w]henever it shall appear to the Commission that *any ... person* has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision" of the Act or the rules and regulations thereunder. 7 U.S.C. § 13a–1 (emphasis added). Thus, in determining the propriety of an order enjoining defendants from denying the Commission access to the records of Heartland, the relevant inquiry must focus on the evidence supporting the Commission's belief that defendants have violated the Act and the regulations thereunder.[1]

■ Among the violations alleged by plaintiff is 7 U.S.C. § 6o(1), which provides:

It shall be unlawful for a commodity trading advisor, associated person of a commodity trading advisor, commodity pool operator, or associated person of a commodity pool operator by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly—

(A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or

(B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

The Commission has alleged that Clothier has violated this section by mailing false statements to Heartland participants concerning Heartland's futures trading—both as to Heartland's profits and the very nature of the trading that was being done. (Complaint, Count III). Obviously, a violation of § 6o(1) would include the fraudulent misappropriation of customers' funds that have been entrusted to a commodity pool operator for trading purposes. *See Commodity Futures Trading Comm'n ex rel. Kelley v. Skorupskas*, 605 F.Supp. 923, 932–33 (E.D.Mich.1985). To accept defendants' argument, however, would remove such misappropriation from the statute because, contrary to the representations of the purported commodity pool operator, no fund in fact existed.

It is unnecessary, however, to decide at this time whether defendants' dubious position is supportable under the statute. Under § 6o(1) of the Act alone, the Commission has presented at least a colorable claim that defendants have violated the Act. The traditional requirements for injunctive relief such as irreparable injury or

---

1. In any event, there appears to be sufficient evidence to undergird the Commission's belief that the Heartland was operating as a commodity pool until very recently, when it was "essentially wiped out." At the February 26 hearing, plaintiff introduced exhibits indicating that: (1) Heartland was organized in 1984 as a Kansas limited partnership "to engage in speculative trading of futures contracts in commodities," (Plaintiff's Ext. 3, private placement memorandum soliciting subscriptions from potential participants); (2) Heartland filed a certificate of limited partnership with the Kansas Secretary of State, dated April 25, 1983, in which the purpose of the partnership is described as "capital appreciation through speculative trading of futures contracts in commodities through registered commodity exchanges in the United States." (Plaintiff's Ext. 4, ¶ 2); (3) Clothier filed only one certificate of amendment to the

Heartland certificate, and this document did not amend the purpose of Heartland (Plaintiff's Ext. 5); and (4) that the Commission has never received from Clothier a request for exemption from the Commission's registration requirements for commodity pool operators, as set forth at 17 C.F.R. §§ 4.12(a), 4.13 (Plaintiff's Ext. 6).

The only contrary evidence presented by defendant was that Clothier had informed the NFA in November 1991 that Heartland had started out trading futures, but that the fund had stopped trading futures sometime in either 1985 or 1986. (Defendants' Memo of Law, Doc. 13, Ext. A, ¶ 8). This unilateral, unsubstantiated representation, made only recently as part of the ongoing investigation of the NFA, no more supports defendants' position than defendants' present representation that Heartland was not trading in futures contracts in commodities.

inadequacy of other remedies are not required under § 13a–1, and the Commission need only show a likelihood of a violation. *See Commodity Futures Trading Comm'n v. British Am. Commodity Options Corp.*, 560 F.2d 135, 141 (2d Cir. 1977), *cert. denied*, 438 U.S. 905, 98 S.Ct. 3123, 57 L.Ed.2d 1147 (1978); *Commodity Futures Trading Comm'n v. Hunt*, 591 F.2d 1211, 1220 (7th Cir.), *cert. denied*, 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979); *Commodity Futures Trading Comm'n v. Muller*, 570 F.2d 1296, 1300 (5th Cir.1978); *see also Commodity Futures Trading Comm'n v. First Nat'l Bullion Corp.*, 461 F.Supp. 659, 661 (S.D.N.Y. 1978) (no requirement that Commission expressly find that subject of its investigation is person subject to Act).

Because the Commission has already instituted a civil action against defendants, the discovery rules of the Federal Rules of Civil Procedure also apply to the Commission's request to review the records of Heartland. Thus, "any relevant subject matter" or any information "reasonably calculated to lead to the discovery of admissible evidence" is subject to discovery by the Commission. *See* Fed.R.Civ.P. 26(b)(1).

Moreover, even in the absence of pending litigation, defendants' argument fails to take into account the full extent of the Commission's investigatory powers as the administrative agency charged with enforcement of the Act. The Commission relies on *United States v. Morton Salt Co.*, 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950), where the court set forth the general principles governing administrative powers of investigation:

The only power that is involved here is the power to get information from those who best can give it and who are most interested in not doing so. Because judicial power is reluctant if not unable to summon evidence until it is shown to be relevant to issues in litigation, it does not follow that an administrative agency charged with seeing that the laws are enforced may not have and exercise powers of original inquiry. It has a power of inquisition, if one chooses to call it that, which is not derived from the judicial

function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.

*Id.* at 642–43, 70 S.Ct. at 364. *See also California Bankers Ass'n v. Shultz*, 416 U.S. 21, 66, 94 S.Ct. 1494, 1519–20, 39 L.Ed.2d 812 (1974); *United States v. Powell*, 379 U.S. 48, 57–58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964); *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 508–09, 63 S.Ct. 339, 343, 87 L.Ed. 424 (1943). In *S.E.C. v. Blackfoot Bituminous, Inc.*, 622 F.2d 512 (10th Cir.1980), the court held that *Morton Salt* and *Powell* require no showing of a "likelihood" of a violation before an administrative agency may institute a formal investigation. 622 F.2d at 514. Indeed, *Blackfoot Bituminous* refused to impose a requirement of a "likelihood of a violation" even when the agency has not yet taken any adverse action against the subject of the investigation. In this case, the Commission has already found sufficient evidence to file suit against defendants. Thus, even if the Commission had not filed suit against defendants, the Commission need only show "that the inquiry is not too indefinite, is reasonably relevant to an investigation which the agency has authority to conduct, and all administrative prerequisites have been met." *Id.*

The Commission has made ample showing that its review of Heartland's records are reasonably relevant to an investigation within its powers. Moreover, as the court has already noted, there is sufficient evidence to warrant the Commission's belief that Heartland has already committed violations of the Act.

At the February 26 hearing, the Commission also requested that it be allowed access to the records of all other funds under the control of Clothier. The Commission did not brief in this issue in its pre-hearing memorandum, and accordingly the court will deny this motion for the present time. The court notes that no funds other than Collins Commodity Brokerage Company

and Heartland Futures Fund have been named as defendants in this action. To the extent that the Commission is able to obtain discovery over these non-parties through discovery devices directed toward named defendants, the Commission may, of course, obtain discovery over the unnamed funds. In the alternative, the Commission may name additional party defendants and proceed with Rule 26 discovery as to the new parties.

Accordingly, and pursuant to the hearing of February 26, 1992, the court enters the following order:

1. Defendants shall provide to authorized representatives of the Commission copies of any and all books, records, documents correspondence, brochures, manuals, bank records, obligations or other property of the HEARTLAND FUTURES FUND. The Commission shall reimburse defendants for the cost of copying all such documents.

2. Defendants shall provide to authorized representatives of the Commission copies of any and all books, records, documents correspondence, brochures, manuals, bank records, obligations or other property of the COLLINS COMMODITY BROKERAGE COMPANY, including, but not limited to, all documents relative to all AZF accounts.

3. The Commission shall avoid making any requests for production or inspection of documents that are duplicative of the investigation being conducted by the National Futures Association. To the extent that the document or documents sought by the Commission have already been provided to the National Futures Association, the Commission shall make every effort to obtain such documents from the National Futures Association.

4. The Commission shall not disclose to any third-party any information, whether in the form of actual documents produced or any information derived from such documents, that it receives as a result of its inspection of any document produced pursuant to this order. If the Commission receives any request to review any such document, the Commission shall immediately notify counsel for defendants of such request. Counsel for defendants shall have ten (10) days in which to file objections to the request or motions for protective orders. This order shall be in addition to any procedures for disclosure imposed by 7 U.S.C. § 12 and any regulations thereunder, if applicable.

IT IS SO ORDERED.