**David L. PAUL, Plaintiff,**

v.

**OFFICE OF THRIFT SUPERVISION OF the DEPARTMENT OF the TREASURY OF the UNITED STATES of America and Timothy Ryan, Director of Office of Thrift Supervision, Defendants.**

**No. 90–2496–CIV.**

United States District Court, S.D. Florida.

Dec. 4, 1990.

Sanford L. Bohrer, Thomson, Muraro, Bohrer & Razook, Miami, Fla., for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Leslie H. Southwick, Deputy Asst. Atty. Gen., Dexter W. Lehtinen, U.S. Atty., Miami, Fla., Harris Weinstein, Chief Counsel, Deborah E. Siegel, Sr. Atty., Office of Thrift Supervision, Washington, D.C., Faith Hochberg, Sr. Deputy Chief Counsel, Office of Thrift Supervision, Jersey City, N.J., Richard C. Stearns, Richard G. Lepley, Attys., Dept. of Justice, Civ. Div., Washington, D.C., for defendants.

## ORDER ON MOTION FOR INJUNCTION AND ON MOTION TO ENFORCE TEMPORARY CEASE AND DESIST ORDER

EDWARD B. DAVIS, District Judge.

Before the court is the plaintiff's motion for a preliminary injunction and the defendant's motion to enforce a statutorily imposed temporary cease and desist order.

### I. FACTS

On February 2, 1990, the defendant, the Office of Thrift Supervision, (the "OTS") removed the plaintiff, David L. Paul ("Paul") from his position as chairman of the board, chief executive officer, and controlling shareholder of Centrust Bank ("Centrust"). In his place, the OTS appointed the Resolution Trust Corporation (the "RTC") as receiver. Subsequently, on October 22, 1990 the OTS issued a temporary order to cease and desist (the "Order") to Paul and Edward G. Davies ("Davies"). Through the Order, the OTS seeks to prevent Paul from dissipating Centrust assets before OTS administrative proceedings occur.

Paul failed to comply timely with the Order. The Order required Paul: (1) to give legally enforceable assurances (security for the $30 million dollar debt Paul purportedly owes to Centrust) that he would comply with any final administrative order; (2) to file an accounting of his assets with the OTS within five days; and, (3) to seek approval, from the OTS, of any sale, trans-

fer or encumbrance of assets in excess of $5,000. Failure to comply with the Order subjects Paul to a $5000 per day fine.

In response, Paul has motioned the court to enjoin the OTS from enforcing the Order. Paul claims that: (1) the OTS did not satisfy the statute which would permit it to issue the Order; (2) Paul acted before Congress enacted the statute so that the OTS applied the statute retroactively; (3) the Order contravenes the fifth, sixth, and seventh amendments to the Constitution; (4) the Order contravenes the Constitution's ex-post facto clause; and, (5) the OTS improperly refuses to use the federal rules of civil procedure or the federal rules of evidence during the proceeding administrative hearing and also refuses to open the hearing to the public.

## II. THE STATUTORY SCHEME

To address the failures of federally insured banks and savings institutions, Congress enacted the Financial Institutions Reform Recovery and Enforcement Act of 1989 ("FIRREA"). 12 U.S.C. § 1811 *et seq.* FIRREA permits the OTS to initiate administrative proceedings to determine whether specified banking practices are sound. During the pendency of these proceedings, the OTS may issue a temporary cease and desist order to maintain the integrity of the assets at issue. 12 U.S.C. § 1818(c)(1). This section states that:

> [w]henever the appropriate Federal banking agency shall determine that the violation or threatened violation or the unsafe or unsound practice or practices, specified in the notice of charges served upon the depository institution or any institution-affiliated party pursuant to paragraph (1) of subsection (b) of this section, or the continuation thereof, is likely to cause insolvency or significant dissipation of assets or earnings of the depository institution, or is likely to weaken the condition of the depository institution or otherwise prejudice the interests of its depositors prior to the completion of the proceedings conducted pursuant to paragraph (1) of subsection (b) of this section, the agency may issue a temporary order requiring the depository institution or

such party to cease and desist from any such violation or practice and to take affirmative action to prevent such insolvency, dissipation, condition, or prejudice pending completion of such proceedings. . . .

■ FIRREA empowers the OTS to enforce these orders, in a district court, under 12 U.S.C. § 1818(d). Pertinently, the section states:

> [i]n the case of violation or threatened violation of, or failure to obey, a temporary cease-and-desist order issued pursuant to paragraph (1) of subsection (c) of this section, the appropriate Federal banking agency may apply to the United States district court ... for an injunction to enforce such order, and, if the court shall determine that there has been such violation or threatened violation or failure to obey, it shall be the duty of the court to issue such an injunction.

Title 12 U.S.C. § 1818(c)(2) allows Paul to seek an injunction to limit the temporary order. The section states that:

> [w]ithin ten days after the depository institution concerned or any institution-affiliated party has been served with a temporary cease-and-desist order, the depository institution or such party may apply to the United States district court ... for an injunction setting aside, limiting, or suspending the enforcement, operation, or effectiveness of such order pending the completion of the administrative proceedings ... and the court shall have jurisdiction to issue such injunction.

Instead of relying on this section, however, Paul motioned the court to enjoin the Order through a common law injunction. This motion would contravene the statutory scheme. The court will thus consider Paul's motion as a motion to enjoin the Order under 12 U.S.C. § 1818(c)(2).

## III. DUE PROCESS

■ Paul argues that the OTS's Order, which demands security for thirty million dollars, deprives him of due process of law. Due process imposes constraints on governmental actions that deprive individuals of property within the Fifth Amendment's

due process clause. The clause gives Paul a property right to control his assets. *FDIC v. Mallen.*[1] (*"Mallen"*). As such, the court must determine what process Paul is due.[2]

> Supreme Court precedent states that:
> [o]ur cases have indicated that due process ordinarily requires an opportunity for "some kind of hearing" prior to the deprivation of a significant property interest ... The Court has often acknowledged, however, that summary administrative action may be justified in emergency situations.... *Hodel v. Virginia Surface Mining and Reclamation Association,* [—— U.S. ——] 101 S.Ct. 2352, 2372 [69 L.Ed.2d 1] (1981).

■ FIRREA provides Paul with a hearing by allowing him to contest the Order in a district court. 12 U.S.C. § 1818(c)(2). However, because the OTS's actions constitute an emergency situation, Paul is not entitled to a predeprivation hearing. In *Mallen,* the Supreme Court stated that:

> an *important government interest, accompanied by a substantial assurance* that the deprivation is not baseless or unwarranted, may in limited cases de-

manding prompt action justify postponing the opportunity to be heard until after the initial deprivation ... In this case, the postponement of the hearing is supported by such an interest. The legislation under scrutiny is premised on the *congressional finding that prompt suspension of indicted bank officers may be necessary to protect the interest of depositors and to maintain public confidence in our banking institutions.*[3]

Analogous to the congressional findings in *Mallen,* the congressional findings in the present case demonstrate that federal banking authorities may act promptly to protect depositors' interests with temporary cease and desist orders.[4] This important governmental interest, like the one at issue in *Mallen,* warrants a post-deprivation hearing.

■ Paul may seek the post-deprivation hearing through 12 U.S.C. § 1818(c)(2) or the OTS may create the opportunity for a post-deprivation hearing by attempting to enforce the Order through 12 U.S.C. § 1818(d).[5] In this hearing, under *Mallen,* the government[6] must provide, "substan-

1. 486 U.S. 230, 108 S.Ct. 1780, 1787, 100 L.Ed.2d 265 (1988).

2. *Id.*

3. *FDIC v. Mallen,* 108 S.Ct. at 1789. *See also Fahey v. Mallonee,* 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947) (approving provision of the Home Owner's Loan Act of 1933 authorizing Federal Home Loan Bank Administration to summarily assume management of any federally insured savings and loan association conducting business in unlawful, unauthorized, or unsafe manner pending outcome of subsequent full investigation, in order to protect customers from further unlawful management and to protect bank's assets from liquidation by panicking customers during federal investigation.); *Woods v. Federal Home Loan Bank Board,* 826 F.2d 1400, 1411 (5th Cir.1987) (FHLBB permitted to appoint receiver to savings and loan *ex parte,* without notice, and without a pre-deprivation hearing).

4. Senate Report No. 1482, 89th Cong., 2nd Sess., *reprinted in* 1966 U.S.Code Cong. & Admin. News 3532, 3532–3539.

5. In either case, however, because procedural due process concerns mandate this hearing, Paul could request it absent statutory authority.

*Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 1396, 71 L.Ed.2d 599 (1982).

6. *North Georgia Finishing, Inc. v. Di–Chem, Inc.,* 419 U.S. 601, 95 S.Ct. 719, 725, 42 L.Ed.2d 751 (1975) (Powell, J., concurring) ("Due process further requires that the State afford an opportunity for a prompt postgarnishment judicial hearing in which the garnishor has the burden of showing probable cause to believe there is a need to continue the garnishment for a sufficient period of time to allow proof and satisfaction of the alleged debt."); *Armstrong v. Manzo,* 380 U.S. 545, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965) ("As the record shows, there was placed upon the petitioner the burden of affirmatively showing that he had contributed to the support of his daughter to the limit of his financial ability over the period involved. The burdens placed upon the petitioner were real, not purely theoretical. For "'it is plain that where the burden of proof lies may be decisive of the outcome.'" ... Yet these burdens would not have been imposed upon him had he been given timely notice in accord with the Constitution."); *Speiser v. Randall,* 357 U.S. 513, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958) ("'It is apparent that a constitutional prohibition cannot be transgressed indirectly by the creation of a statutory presumption any more than it can be

tial assurance" that the deprivation is not baseless or unwarranted i.e. does FIRREA encompass Paul's activities.

## IV. DOES FIRREA ENCOMPASS PAUL'S ACTIVITIES

Under 12 U.S.C. § 1818(c)(1), the OTS must demonstrate that:

(1) Centrust is a "depository institution;" or,

(2) Paul is an institution affiliated party under 12 U.S.C. § 1818(b)(1); and,

(3) the OTS, as a federal banking agency, has determined that Paul's violation of the charges that the OTS specified in the notice of charges is likely:

 (a) to cause Centrust's insolvency; or

 (b) to cause a significant dissipation of Centrust's assets; or

 (c) to weaken Centrust's condition; or,

 (d) to prejudice the interests of Centrust's depositors.

■ Paul avers that: (1) he had no role in Centrust since February 2, 1990 when the OTS appointed the RTC as Centrust's conservator; (2) OTS or RTC closed Centrust in March, 1990; and, (3) on October 23, 1990 the OTS initiated administrative action, issued a notice of charges; and, issued a temporary cease and desist order. Based on these facts, Paul argues that FIRREA does not apply because under the statute's terms, Centrust is no longer an insured depository institution and he is no longer an institution affiliated party.

First, FIRREA's definition of an "institution affiliated party" encompasses Paul. 12 U.S.C. § 1813(u). Section 1813(u) defines an "institution affiliated party" as "any shareholder ... who participates in the conduct of the affairs of an insured depository institution...." Moreover, 12 U.S.C. § 1818(i)(3) states that "the resignation, termination of employment ... or separation of an institution affiliated party (including a separation by the closing of an insured depository institution) shall not affect the jurisdiction and authority ... of the OTS." Paul admits that he owns

shares in Centrust and Paul's separation from Centrust caused by Centrust's closing is irrelevant. In addition, Centrust is an insured depository institution under 12 U.S.C. § 1813(c)(2) which includes any savings association whose deposits the FDIC insures. Centrust remains a depository institution under the statute even though the OTS appointed the RTC as Centrust's receiver. To conclude otherwise would deprive Centrust's successor's of any assets due which Paul controls.

Second, if Paul controls the assets that the OTS alleges, then the Order will maintain the status quo until the administrative hearing. Depositors will not be prejudiced. The Order prevents Paul from dissipating assets.

■ Third, the court has not applied FIRREA retroactively. Whether or not the statutes that preceded FIRREA's enactment would have also encompassed Paul's alleged conduct, the Order outlines conduct that took place after FIRREA was enacted. FIRREA clearly addresses this conduct. Therefore, the OTS has not applied FIRREA retroactively. For these reasons, FIRREA encompasses Paul's conduct.

## V. EX-POST FACTO CLAUSE

■ Paul next argues that retroactive application of FIRREA violates the constitution's ex-post facto clause. However, for the reasons stated above, the court has not applied FIRREA retroactively. As such, the ex-post facto clause does not apply to this case.

## VI. THE ADMINISTRATIVE HEARING

■ Finally, Paul argues that the administrative hearing will deprive him of a right to a jury trial under the seventh amendment to the constitution. Paul claims that OTS's action is tantamount to an action for damages which mandates jury trial. However, Supreme Court precedent holds that Congress may delegate fact finding powers to an administrative agency in

violated by direct enactment. The power to create presumptions is not a means of escape

from constitutional restrictions.' ").

574

actions to enforce public rights. *Atlas Roofing Co., Inc., v. Occupational Safety and Health Review Commission*, 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977). Thus no seventh amendment problem exists.

 Paul, speculating that the OTS may bring criminal proceedings, makes a similar argument regarding the right to a jury trial under the sixth amendment. This issue, however, is not ripe. The court is considering the temporary cease and desist order and not any hypothetical administrative proceeding. Similar reasoning applies to Paul's argument that he will not receive a fair trial because the OTS has allegedly prejudged his case and that the hearing should be public and that the federal rules of evidence and civil procedure should apply. These arguments should be addressed to the court of appeals which has exclusive jurisdiction to review the administrative determinations. *First National Bank of Scotia v. United States*, 530 F.Supp. 162, 167–168 (D.D.C.1982).[7] Based on the foregoing, it is therfore

ORDERED AND ADJUDGED that Paul's motion for injunctive relief is DENIED and that the OTS's motion to enforce the temporary cease and desist order is GRANTED.

DONE AND ORDERED.

---

**7.** Twelve § 1818(h)(2), in pertinent part, states that:

　any party to any proceeding under paragraph (1) [which includes cease and desist actions brought under subsection (b)(1)] may obtain a review of any order served pursuant to paragraph (1) of this subsection ... by the filing in the court of appeals of the United States ... within thirty days after the date of service of such order, a written petition praying that the order of the agency be modified, terminated, or set aside.