**OFFICE OF THRIFT SUPERVISION,**
**U.S. Department of the Treasury,**
**Plaintiffs,**

v.

**David L. PAUL, Defendant.**

**No. 96–1315–CIV–UNGARO.**

United States District Court,
S.D. Florida.

Oct. 28, 1997.

---

Mary F. Dooley, U.S. Atty's Office, Miami, FL, for U.S. Dept. of Treasury.

David L. Paul, pro se.

## *ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

UNGARO-BENAGES, District Judge.

THIS CAUSE is before the Court upon the parties' cross motions for summary judgment. Plaintiff("OTS") filed its Renewed Motion for Summary Judgment (DE–27) on February 18, 1997, to which Defendant ("Paul") filed no response. Paul filed his Motion for Summary Disposition (DE—24) on February 21, 1997, to which the OTS filed an opposition memorandum on March 6, 1997 (DE—30).

THE COURT has considered the motions, read the pertinent portions of the record, and being otherwise fully advised in the premises, the OTS's Motion is granted, and Paul's Motion is denied.

## I. *FACTS*

### A. **Background**

The OTS is a federal bank regulatory agency that has the statutory power to issue orders against institution-affiliated parties of savings associations pursuant to provisions of the Home Owners' Loan Act and the Federal Deposit Insurance Act. *See* 12 U.S.C. §§ 1461 *et seq.*, 1813, 1818. (Complaint ¶ 4). On August 29, 1991, the OTS served a written Notice of Assessment to David Paul, who had been the Chief Executive Officer and Chairman of CenTrust Bank, an OTS-regulated State Savings Bank, (Complaint ¶ 5, Answer ¶ 6), relating to the OTS's pending administrative civil money penalty proceeding. (Complaint ¶ 10, Answer ¶ 12.b).[1] The

OTS charged Paul with violating its Temporary Order to Cease and Desist, for which the OTS sought $3,172,500 in civil money penalties. (Complaint ¶ 11; OTS Mot. at 3).

An administrative law judge conducted a hearing and recommended that the OTS issue a final order assessing civil money penalties against Paul. (Complaint ¶ 11; OTS Mot at 3; Paul Mot. at 3). The OTS Acting–Director did so on December 15, 1993. *See* OTS Order No. AP 93–104, 1993 OTS DD LEXIS 132. The Order ("Final CMP Order") assessed civil penalties against Paul in the amount of $841,748.25. The OTS served the Final CMP Order on Paul on December 15, 1993, directing Paul to make payment to the OTS's Controller's Division within sixty days of service. *See* Final CMP Order at 83, ¶ 16. The Final CMP Order became effective immediately and gave Paul until February 13, 1994 to make payment. *Id.* at 86.

The Final CMP Order (at ¶ 23) gave Paul notice of his right to appeal the Order to the U.S. Court of Appeals within thirty days pursuant to 12 U.S.C. § 1818(h). It is undisputed that Paul did not commence an appeal, nor did any court stay, modify, or set aside the Final CMP Order, nor has Paul made any payment to the OTS as a result of the Order. (OTS Mot. at 4; Answer ¶ 19; OTS Exh. 3 ¶ 4).

### B. **Procedural Status**

The OTS filed its Complaint in this matter on May 16, 1996. The Complaint requested that this Court enforce the Final CMP Order by entering final judgment in the amount of $841,748.25 pursuant to 12 U.S.C. § 1818, post-judgment interest and costs pursuant to 28 U.S.C. § 1961, and a ten percent surcharge to cover the cost of the OTS's collection pursuant to 28 U.S.C. § 3011. (OTS

---

1. Insofar as the undersigned holds that this Court lacks jurisdiction to review the merits of the Final CMP Order, *see* § III, *infra*, it is unnecessary to consider all of the proceedings involved in this matter. The first proceedings did begin in October, 1990, when the OTS commenced its first administrative proceeding against Paul, following a lengthy investigation of CenTrust Bank in which it found that Paul had engaged in self-enriching abuses while controlling CenTrust

Bank. Subsequent district court proceedings resulted in opinions found at *Paul v. Office of Thrift Supervision*, 763 F.Supp. 568 (S.D. Fla.1990), *aff'd*, 948 F.2d 1297 (11th Cir.1991) (*per curium* ) (denying Paul's motion for preliminary injunction and ordering Paul to obey Temporary Order) and *Paul v. OTS*, No. 91–2082–CIV–DAVIS (S.D.Fla., March 31, 1992) (dismissal of action to stay administrative proceeding).

Order No. AP 93–104; Complaint at 8–9). The OTS filed its first Motion for Summary Judgment with its Motion for Default Judgment on October 8, 1996. After a court-ordered enlargement of time, Paul, who is proceeding *pro se* in this matter, filed his Answer on December 2, 1996, which mooted the OTS's pending motions.

Paul's Answer asserted ten affirmative defenses: six challenged the appropriateness or validity of the Final CMP Order;[2] laches (Aff. Def 4); statute of limitations (Aff.Def.5); failure to state a claim upon which relief can be granted; and lack of standing. As explained in § III.C.3 below, these affirmative defenses, except possibly Paul's argument that the Final CMP Order is void *ab initio* due to the alleged lack of authority for the OTS Deputy Director to issue the Order, have either been abandoned by Paul or are procedurally barred.

In any event, on October 29, 1996, this Court entered its Order allowing Plaintiff to renew its Motion for Summary Judgment, which the OTS did on February 18, 1997. The OTS's primary argument is that the applicable statutes mandate entry of summary judgment in its favor and preclude the district court from considering Paul's affirmative defenses. These arguments are addressed in § III.A, *infra.* Although Paul never responded to the OTS's motion, he did file his own motion on February 21, 1997, in which he persists in his contention that the Final CMP Order is jurisdictionally defective because it was issued by a person without authority to do so. Additionally, Paul argues that venue is improper in this Court, and essentially that this action is barred by the six year statute of limitations contained in § 1818. The OTS responded on March 6, 1997. The Court has considered these filings, along with their exhibits and attachments, in resolving the cross-motions for summary judgment.

2. These affirmative defenses include: 2) OTS Acting Director lacked authority to issue Final CMP Order, 6) CenTrust was not an insured depository institution nor was Paul an institution-affiliated party as required by statute; 7) OTS action is barred by the double jeopardy

## II. *SUMMARY JUDGMENT STANDARD*

The procedure for disposition of a summary judgment motion is well established. Summary judgment is authorized only when:

the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is *no genuine issue as to any material fact* and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56 (emphasis added); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987). The party moving for summary judgment has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In applying this standard, the *Adickes* Court explained that, when assessing whether the movant has met this burden, the court should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. All reasonable doubts about the facts should be resolved in favor of the non-movant. *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608.

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings. After the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the non-moving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553; *Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

If the record presents factual issues which are material to the outcome of the case, the Court must not decide them; it must deny the motion and proceed to trial. *Environmental Defense Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981). Summary judgment may be inappropriate even where the parties

clause of the U.S. Constitution; 8) the OTS has waived its available remedies; 9) the OTS is estopped from seeking its requested relief; and 10) the OTS failed to comply with enabling legislation and regulations.

agree on the basic material facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the inferences arising from undisputed material facts, then the Court should deny summary judgment, as a genuine dispute exists. *Impossible Electronic Techniques, Inc. v. Wackenhut Protective Systems, Inc.,* 669 F.2d 1026, 1031 (5th Cir. 1982). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("[T]he dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the non-moving party").

These principles are equally applicable when, as in this case, the plaintiff is seeking entry of summary judgment and the defendant has asserted affirmative defenses. On a plaintiff's motion for summary judgment, the defendant bears the initial burden of showing that the affirmative defense is applicable. *Blue Cross and Blue Shield v. Weitz,* 913 F.2d 1544, 1552 (11th Cir.1990) (affirming district court's summary judgment order as to plaintiff). Only upon such a showing does the burden shift to plaintiff regarding that affirmative defense. *Id.* at note 13. The reason is that the defendant bears the burden of proof on his affirmative defenses at trial. *See Thorsteinsson v. M/V Drangur,* 891 F.2d 1547, 1550–51 (11th Cir.1990) (citations omitted).

Thus, summary judgment is appropriate where the defendant fails to come forward with evidence sufficient to dispute an element of the plaintiff's case or to support an affirmative defense. *Riberglass, Inc. v. Techni-Glass Indus., Inc.,* 804 F.2d 1577, 1580 (11th Cir.1986) (affirming summary judgment in favor of plaintiff), *reh'g granted and rev'd on other grounds,* 811 F.2d 565 (11th Cir.1987) (district court wrongly considered certain evidence). In fact, the *Riberglass* court interpreted the Supreme Court's view as "mak[ing] clear that once a properly supported motion for summary judgment has been made it is not incumbent upon the movant to produce evidence negating the existence of a genuine issue of fact as to issues or elements that the nonmovant must prove at trial." *Id.* (interpreting *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2553).

### III. *LEGAL ANALYSIS*

#### A. The OTS's Motion for Summary Judgment

■ The OTS argues that this Court should reject Paul's affirmative defenses and enter final summary judgment enforcing the Final CMP Order. The Court agrees with the OTS that it has jurisdiction to enforce the Final CMP Order pursuant to 12 U.S.C. § 1818(i)(1), which provides:

> The appropriate Federal banking agency may in its discretion apply to the United States district court, . . . within the jurisdiction in which the home office of the depository institution is located, for the enforcement of any effective and outstanding notice or order issued under this section . . . , and such courts shall have jurisdiction and power to order and require compliance herewith,

The Court further agrees that this jurisdiction is limited: section 1818(i)(1) provides that "no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under any such section, or to review, modify, suspend, or terminate, or set aside any such notice or order." *id.;* additionally, 12 U.S.C. § 1818(i)(2)(I)(ii), states that "[i]n any civil action under clause (i), the validity and appropriateness of the penalty shall not be subject to review." Thus, the very same statute that vests this Court with jurisdiction to adjudicate this enforcement action precludes it from examining the merits of Paul's challenges to the OTS's ability to issue the Final CMP Order.

■ As courts of limited jurisdiction, federal courts may only exercise jurisdiction pursuant to a statutory grant of authority to adjudicate the asserted claim. *See Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994). Such jurisdictional statutes "are to be construed with precision and with fidelity to the terms by which Congress has expressed its wishes." *Palmore v. United*

*States,* 411 U.S. 389, 396, 93 S.Ct. 1670, 1675, 36 L.Ed.2d 342 (1973) (citations omitted). Further, a court must "scrupulously confine [its] own jurisdiction to the precise limits which a statute has defined." *Victory Carriers, Inc. v. Law,* 404 U.S. 202, 212, 92 S.Ct. 418, 425, 30 L.Ed.2d 383 (1971) (citations omitted). In determining whether Congress intended a statute to preclude initial judicial review, it is necessary to examine the statute's language, structure, purpose, legislative history and whether the claims can be afforded meaningful review. *Thunder Basin Coal Co. v. Reich,* 510 U.S. 200, 207, 114 S.Ct. 771, 776, 127 L.Ed.2d 29 (1994).

■ Courts interpret the preclusion clause located at § 1818(i)(1) in a literal manner. For example, in *Groos Nat'l. Bank v. Comptroller of Currency,* 573 F.2d 889 (5th Cir. 1978), a seminal case cited by many circuits regarding this issue that is still controlling precedent in this Circuit, the Fifth Circuit held in refusing to enjoin an order issued by the Comptroller of the Currency,

> Section 1818 as a whole provides a detailed framework for regulatory enforcement and for orderly review of the various stages of enforcement; and section 1818(i) in particular evinces a clear intention that this regulatory process is not to be disturbed by untimely judicial intervention, at least where there is no 'clear departure from statutory authority.'

(citing *Manges v. Camp,* 474 F.2d 97, 99 (5th Cir.1973)). This "statutory authority" exception[3] applies "only when the agency's action is blatantly lawless." *Abercrombie v. Office of Comptroller of Currency,* 833 F.2d 672 (7th Cir.1987) (court had no authority to decide merits of Comptroller's action but could only determine whether a clear statutory violation occurred) (citation omitted).

■ Consistent with the *Groos* court's admonishment in that case, Paul was free to argue the merits of the OTS's actions either during the administrative proceeding[4] or on appeal to the Eleventh or D.C. Circuit Courts of Appeals within thirty days of the issuance of the Final CMP Order, or in both fora. *See* Final CMP Order ¶ 23; 12 U.S.C. § 1818(h) (granting *exclusive* jurisdiction to the courts of appeals to review final orders from banking agencies). He did not and cannot now attempt to remedy that error through an untimely collateral attack in this district court, which does not have jurisdiction over those issues. *See United Liberty Life Ins. Co. v. Ryan,* 985 F.2d 1320, 1326–27 (6th Cir.1993) (holding that court lacks jurisdiction to review FDIC decision regarding which agency had statutory discretion); *FDIC v. Bank of Coushatta* 930 F.2d 1122, 1126 (5th Cir.1991) (upholding refusal to review FDIC directive); *Abercrombie v. Clarke,* 920 F.2d 1351, 1354 (7th Cir.1990) (upholding Comptroller's legal authority to assess civil money penalties); *Leuthe v. Office of Financial Institution Adjudication,* 977 F.Supp. 357, 361 (E.D.Pa.1997) (declining jurisdiction because § 1818 provides a mechanism for meaningful review which lies exclusively in the courts of appeals); *Henry v. Office of Thrift Supervision,* 835 F.Supp. 583 (D.Kan.1993) (court lacks authority to affect issuance or enforcement of OTS consent order or to set aside any such order). Rather, the extent of the jurisdiction granted to district courts under § 1818(i)(1) is restricted to enforcement of the OTS's consent or penalty orders. *See Henry v. Office of Thrift Supervision,* No. 92–4272–DES, 1993 WL 545195, at *8 (D.Kan. Dec.28, 1993) (*affirming* 835 F.Supp. 583 upon reconsideration); *see also Director of the Office of Thrift Supervision v. Seals,* No. 93 C 1480, 1993 WL 313149, at *1 (N.D.Ill. August 16, 1993) (granting summary judgment in favor of OTS ordering enforcement of OTS final order).

■ Accordingly, based on the statute governing this matter, 12 U.S.C. § 1818, and

---

3. Neither party has raised the issue of the judicially recognized "statutory authority" exception to § 1818(i)(1), but in some respects, Paul's argument regarding the constitutionality of the acting-director's actions could be construed as such. Accordingly, that argument will be considered *infra.*

4. In its motion, the OTS points out that Paul showed up to the hearing before the administrative law judge and made a statement, but he allegedly walked out of the hearing room prior to the taking of appearances. Paul has not contradicted this assertion. (OTS Mot. at 3, Final CMP Order, at 25).

the case law interpreting it, this court's jurisdiction is limited to a consideration of "whether the final order is final and effective." *Director of Office of Thrift Supervision v. Seals,* No. 93 C 1480, 1993 WL 313149 (N.D.Ill.1993) (enforcing final order pursuant to § 1818(i)(1)). The applicable federal regulations provide that an order becomes final and effective immediately upon service. *See* Final CMP Order at 86, ¶ 22; 12 U.S.C. §§ 1818(h), 1818(i)(2)(K); 12 C.F.R. § 509.103(a). The OTS served the Final CMP Order on Paul in December 1993, at which time it became final and effective.[5] Although Paul had a statutory right to appeal the Order at that time to the U.S. Court of Appeals, there is no genuine issue of material fact as to the Order's finality and effectiveness as of December 1993, nor that Paul did not avail himself of the statutory appeal procedure. (Complaint ¶ 13; Answer ¶ 13; Brecher Decl. ¶ 6). Similarly, it is undisputed that Paul has made no payments toward the $841,748.25 which he owes to the OTS pursuant to the Final CMP Order. In his Answer (¶ 19), he admits that he has yet to make any payment to the OTS. (*see also* Gustafson Decl ¶ 4). Because there are no genuine issues of material fact with regard to the finality, validity and effectiveness of the Final CMP Order, and because Paul has not complied with that Order, the OTS is entitled to entry of an order granting its Motion for Summary Judgment unless Paul has demonstrated in his motion that there is a genuine issue of material fact with respect to any of his affirmative defenses, or that *this* proceeding is defective due to either improper venue or because this action is barred by the six year statute of limitations contained in § 1818(i).

### B. Paul's Affirmative Defenses

■ As explained above, the statutory bar raised by the OTS is dispositive of Paul's six affirmative defenses attacking the finality, validity and effectiveness of the Final CMP Order: the OTS Acting Director lacked authority to issue Final CMP Order (Aff.Def.2); CenTrust was not an insured depository institution nor was Paul an insti-

tution-affiliated party as required by statute (Aff.Def.6); the OTS action is barred by the double jeopardy clause of the U.S. Constitution (Aff.Def.7); the OTS has waived its available remedies (Aff.Def.8); the OTS is estopped from seeking its requested relief (Aff.Def.9); and the OTS failed to comply with enabling legislation and regulations (Aff.Def.10). Moreover, in his motion Paul has not presented any evidence or legal arguments supporting any of the remaining affirmative defenses contained in his Answer: the complaint fails to state a claim against Paul upon which relief can be granted (Aff.Def.1); the OTS lacks standing (Aff.Def.3); laches (Aff.Def.4); and statute of limitations (Aff.Def.5). Therefore, as a procedural matter, Paul's affirmative defenses fail, and the OTS is entitled to entry of final summary judgment. *Blue Cross and Blue Shield v. Weitz,* 913 F.2d 1544, 1552 (11th Cir.1990) (affirming district court's entry of final summary judgment in favor of plaintiff); *see also Mulhall v. Advance Sec., Inc.,* 19 F.3d 586, 592 (11th Cir.1994).

### C. Paul's Motion For Summary Judgment

As explained above, Paul has failed to produce evidence supporting all but one of his affirmative defenses, and in any event, his affirmative defenses attacking the validity of the Final CMP Order are procedurally barred. Nonetheless, in his Motion for Summary Disposition, Paul persists in arguing that the Final CMP Order is void *ab initio* due to the Deputy Director's lack of authority to issue it. Paul also argues that the OTS initiated this lawsuit in the wrong venue and that this action is barred by the statute of limitations contained in § 1818. These issues are addressed on their merits below, despite the fact that Paul's challenge to the Deputy Director's authority is clearly precluded by § 1818, which governs this action, because Paul failed to assert improper venue in his Answer. Fed. R. Civ. Proc. 12(h)(1), and because the statute of limitations issue has already been decided against him.

---

**5.** Paul has never contested that he was served with the Final CMP Order.

### 1. Venue

In his Motion, Paul challenges the venue of this court, claiming that he is not a resident of Florida. He is currently in federal prison in Jessup, Georgia. First, pursuant to Fed. R. Civ. Proc. 12(h)(1), Paul waived this affirmative defense by not raising it in his Answer. Further, the applicable statute speaks clearly to this issue. This action is appropriate in this district because it is "within the jurisdiction of which the home office of the depository institution is located." § 1818(i)(1). CenTrust Bank was located in Miami, Florida. Therefore, this Court is an appropriate forum for this action.

### 2. Statute of Limitations

Paul also claims that he ceased being an institution-affiliated party within the meaning of § 1818(i)(3) more than six years prior to the time the OTS commenced *this* proceeding, and therefore this action is barred. First, this issue was already decided in a related proceeding. *Paul v. OTS,* 763 F.Supp. 568, 573 (S.D.Fla.1990) (ruling that OTS had statutory jurisdiction over Paul as "institution-affiliated party"), *aff'd,* 948 F.2d 1297 (11th Cir.1991). Although this affirmative defense may now be barred and has already been ruled on, regardless § 1818(i)(3), which Paul cites, specifically states that the fact that Paul is no longer an institution-affiliated party does not divest the court of jurisdiction so long as a notice of charges was served by the agency within six years of his ceasing to be such a party.[6] Notice was filed by the OTS on August 29, 1991, only eighteen months from the time Paul claims he ceased being an institution-affiliated party. (Paul Mot. at 3). As such, this challenge has no merit.

### 3. The Authority of the Deputy Director

In his Motion for Summary Disposition, Paul's primary argument is that the OTS's Order is void because it was issued by a person without authority to do so. This ar-gument is premised on the fact that Jonathan L. Fiechter performed the activities of the Director of the OTS without being appointed by the President and confirmed by the Senate, which violates the Appointments Clause of the Constitution (Article II, § 2, cl. 2) and the Vacancies Act (5 U.S.C. § 3345 *et seq.*).

#### a. Procedural Bar

As a preliminary matter, the Court has considered and rejected Paul's contention that his argument that the Deputy Director lacked the authority to issue the Final CMP Order is a jurisdictional challenge to the underlying OTS proceeding that trumps the procedural bar contained in the relevant statutes. For this proposition he cites to *Olympic Federal Savings and Loan v. OTS,* 732 F.Supp. 1183 (D.D.C.) (preliminary injunction granted to stop action under auspices of unconstitutional Director), *dism'd as moot,* 903 F.2d 837 (D.C.Cir.1990). However, his reliance on that case is misplaced, and in fact that case can be used to resolve this matter against him. *Olympic Federal* was an action seeking an injunction in district court to prohibit the OTS from appointing a receiver or conservator over a financial institution. Olympic claimed that the director and acting director of the OTS were unconstitutionally appointed (similar to Paul's claim). The OTS unsuccessfully argued that the court lacked jurisdiction to issue the injunction. 732 F.Supp. at 1190.

The statute at issue in *Olympic Federal* was the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), the same statute that created the OTS. Its language is similar to 12 U.S.C. § 181 8(i)(1), although authorizing appeals to the *district court* within thirty days of appointment of a conservator or receiver. Also similar to § 1818, failure to appeal such an appointment strips the courts of jurisdiction to remove a conservator or receiver. However, *Olympic Federal* was a challenge to the OTS Director's authority before he appointed a receiver. The district court held that noth-

---

6. Section 1818(i)(3) provides that the "separation of an institution-affiliated party ... shall not affect the jurisdiction and authority of the appropriate Federal banking agency to issue any notice and proceed under this section against any such party, if such notice is served before the end of the 6–year period beginning on the date such party ceased to be such a party with respect to such depository institution."

ing in the statute prohibited a *pre-appointment* review and injunction. *See* 732 F.Supp. at 1190.

The case at bar is a challenge to the Director's authority to issue a civil monetary penalty, but Paul's challenge came *after* the OTS had performed its statutory duty, and after the time for appeal had elapsed. The relevant portion of FIRREA, as well as § 1818(i)(1), prohibit post-action review. *See* 732 F.Supp. at 1190–91 n. 6 ("subsection G [of FIRREA] by its terms only prohibits the courts from removing or restraining an appointed conservator"). The Eleventh Circuit rejected Paul's view of the Court's jurisdiction in a case involving the pre-FIRREA statute. *See Biscayne Fed. Sav. & Loan v. Federal Home Loan Bank Bd.,* 720 F.2d 1499 (11th Cir.1983) (once statutory ground for receivership found to exist, district court had no authority to disrupt appointment of receiver), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984). Therefore, this Court lacks jurisdiction to consider Paul's challenge to the OTS Director's authority.

**b. The Merits of the Claim**

 In any event, Paul's challenge fails on the merits. As Paul points out in his motion, a final CMP order must be issued by the Director of the OTS, or logically, anyone legally possessing the powers of the Director. (Paul Motion at 7); *see* Home Owners' Loan Act ("HOLA"), 12 U.S.C. §§ 1462, 1464. The gist of Paul's argument is that the acting director who signed the Final CMP Order was not appointed by the President nor confirmed by the Senate in violation of relevant statutes and the Constitution. In response to Paul's argument, the OTS asserts that at all times relevant to this action, Fiechter held a valid delegation to exercise "all powers" of the Director as authorized by statute, and

therefore, Fiechter had the necessary authority to issue the Final CMP Order.

At the time these proceedings started, in 1990, the Director of the OTS was Timothy Ryan, Jr., who was appointed by President Bush and confirmed by the Senate for a term from April 4, 1990–95. (Paul Mot. at 4). It is undisputed that at that time, Jonathan Fiechter was the OTS Deputy Director for Washington Operations. On December 4, 1992, Director Ryan delegated "all powers" of the Director to Deputy Director Fiechter by issuing OTS Orders 92–514 and 92–515. He resigned the same day.

Section 1464(d)(1)(A) vests the Director with power to enforce § 8 of the Federal Deposit Insurance Act (§ 1818) and its regulations. It is this language that Paul uses to attempt to refute the authority of Fiechter. However, § 3(h)(4)(A)(ii) of the HOLA authorizes the Director to "delegate to any employee, representative, or agent *any power* of the Director." (emphasis added). There is no reason why such power would not include the authority vested in the Director pursuant to § 1818(i)(2), from which Fiechter, upon delegation, issued the Final CMP Order.[7]

 Paul argues that Fiechter's delegation is governed by the Vacancies Act, 5 U.S.C. § 3345 *et seq.* (providing that an officer who dies, resigns, or is sick or absent shall be temporarily replaced by the officer's assistant until replaced or the expiration of 120 days). 5 U.S.C. § 3348(a). This assumes that the Vacancies Act applies in the first place. The OTS counters that the Act is not implicated because Ryan validly delegated his responsibilities to Fiechter in Orders 92–514 and 92–515; thus no actual vacancy existed within the meaning of the Act.[8] In other words, Fiechter's powers are derived from the OTS Orders, not the statutory fall

---

7. The *Olympic Federal* case cited by Paul, *supra,* did hold the appointment of an OTS Director unconstitutional and, therefore, invalidated delegations made by him. 732 F.Supp. at 1193. However, unlike in *Olympic Federal,* it is undisputed that *Ryan's* appointment was constitutional. Paul disputes Ryan's delegation powers, not his appointment, and because he was constitutionally appointed, his delegations are not invalid under the reasoning in *Olympic Federal.*

8. As a matter of constitutional law, it is troubling that a duly appointed and confirmed officer can resign and replace himself, for three years, with an individual acting in the capacity of an appointed position without satisfying the constitutional requirements for such an appointment. Nonetheless, it appears that the statute allows it, and it is within Congress' power to prescribe the authority of officers to delegate their authority to subordinates.

back provisions of the Vacancies Act. Although Ryan subsequently resigned, it is a general rule that "administrative orders ordinarily remain in effect beyond the tenure of the individual who issued them." *United States v. Messersmith*, 692 F.2d 1315, 1317 (11th Cir.1982) (interpreting statute listing specific individuals with power to authorize wiretaps and holding delegation valid); *see also, i.e., United States v. Anderson*, 39 F.3d 331, 340 (D.C.Cir.1994) (following *Messersmith*); *Railroad Yardmasters v. Harris*, 721 F.2d 1332, 1344 (D.C.Cir.1983) ("Institutional delegations of power are not affected by changes in personnel, but rather continue in effect as long as ... the delegation is not revoked or altered.... Any other rule would impose an undue burden on the administrative process."). These cases also refute Paul's argument that Ryan could not delegate powers beyond his tenure as Director.[9]

Moreover, as the OTS points out, § 1462a(h)(4)(A)(i) authorizes the Director to designate an individual to act as Director in the Director's absence. Ryan did so in OTS Order No. 92–514. Ryan's resignation can be construed to constitute an "absence" within the meaning of the statute, which would not be an unusual interpretation. *See, e.g.,* 31 U.S.C. § 301(0)(i) (1995) (authorizing General Counsel of the Treasury to designate another to act as General Counsel upon absence, inability to serve, or vacancy); *Imazio Nursery, Inc. v. Dania Greenhouses*, 69 F.3d 1560, 1568 (Fed.Cir.1995) ("Where Congress uses the same form of language in different statutes having the same general purpose, courts presume that Congress intended the same interpretation to apply in both instances."), *cert. denied,* —— U.S. ——, 116 S.Ct. 2549, 135 L.Ed.2d 1069 (1996).

■ Finally, there is another legal doctrine that quashes Paul's challenge to Fiechter's actions, and that is the *de facto* officer doctrine. The Supreme Court has recently defined this doctrine as conferring "validity upon acts performed by a person acting under color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient." *Ryder v. United States*, 515 U.S. 177, 179, 115 S.Ct. 2031, 2034, 132 L.Ed.2d 136 (1995). Under this doctrine, even if an appointment is found to be contrary to the Appointments Clause of the Constitution, an officer's official acts may still be protected. *See, e.g., Buckley v. Valeo*, 424 U.S. 1, 142, 96 S.Ct. 612, 693, 46 L.Ed.2d 659 (1976). This rule has also been followed in the context of an OTS Director where an appointment was found violative of Art. II, § 2, cl. 2 of the Constitution, as Paul argues, and nonetheless, the Director's acts were protected by the de facto officer doctrine. *See Franklin Sav. Assoc. v. Director of the Office of Thrift Supervision*, 740 F.Supp. 1535, 1542 (D.Kan. 1990) (granting summary judgment for the OTS on the issue of the unconstitutionally-appointed Director's valid appointment of a conservator).

■ *Ryder* does provide an exception to the *de facto* officer doctrine, specifically when "one makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case." 515 U.S. at 181, 115 S.Ct. at 2035. This exception applied in *Ryder* because the government action was challenged prior to court action. A similar result occurred in *Federal Election Commission v. NRA Political Victory Fund*, 6 F.3d 821, 822–23, 828 (D.C.Cir.1993) (timely appeal of civil penalty order). However, the instant case is dissimilar to the *FEC* case. (Paul Mot. at 17–18). In the *FEC* case, the challenge came during the proceedings for the issuance of a civil penalty order, not after a Final CMP Order was issued. Thus, because Paul's challenge is not timely within the meaning of *Ryder*, nor within the appellate review period prescribed by § 1818, the exception to the *de facto* doctrine does not apply. *See also, Olympic Federal*, 732 F.Supp. at 1195–96 (invoking exception to de facto doctrine for challenge before OTS Director acted, not for past acts of Director).

---

9. The Court does not hold that such a designation could be indefinite, and the Court has no occasion to decide that issue at this time. The undersigned is satisfied at this time that Fiechter issued the Final CMP Order within Ryan's constitutionally-proper term of appointment, within which time Ryan would be free to designate someone to act in his absence.

**1476**

Even if this Court had jurisdiction over Paul's arguments, and even if it were to hold that Fiechter's actions violate Art. II, § 2, cl. 2 of the Constitution, the *de facto* doctrine applies, which would validate Fiechter's issuance of the Final CMP Order. Thus, for all of the above reasons, Paul's motion is denied.

## IV. CONCLUSION

As the OTS argues, this Court is without jurisdiction to consider Paul's affirmative defenses and the merits of Paul's Motion for Summary Disposition. The statutes governing the OTS's actions in this matter give the Director jurisdiction to issue the Final CMP Order at issue here, but they also vest exclusive jurisdiction to hear appeals of a final penalty order in the circuit courts of appeals. This Court's jurisdiction is limited to enforcing the Final CMP Order to the extent that Paul has failed to comply with it.

However, even if this Court had jurisdiction to consider Paul's summary judgment arguments, it finds that they are without merit. Further, even if Fiechter's actions in some way violated the Constitution, they would be protected by the *de facto* officer doctrine.

Thus, the Court finds that there are no genuine issues of material fact, and that Plaintiff shall prevail as a matter of law. Accordingly, it is hereby

ORDERED AND ADJUDGED that the OTS's motion be GRANTED and that Paul's motion be DENIED for the reasons set forth above. It is further

ORDERED AND ADJUDGED that final judgment will be entered in favor of Plaintiff consistent with the Court's ruling herein. It is further

ORDERED AND ADJUDGED that Defendant Paul shall pay to the OTS the civil money penalties totaling $841,748.25, which were assessed by the OTS's Final CMP Order, plus post-judgment interest, and a surcharge of ten percent of the civil money penalty to cover the cost of processing and

handling the litigation and enforcement by the OTS as provided by 28 U.S.C. § 3011.